## Kentucky Traction & Terminal Co. v. Peel.

(Decided September 30, 1919.)

### Appeal from Jessamine Circuit Court.

1. Appeal and Error—Sufficiency of Evidence.—Evidence examined and held sufficient to sustain the verdict.

2. Appeal and Error—Question for Jury.—Where there is a question of fact upon which the evidence is conflicting, it is for the jury, and its verdict will not be disturbed by this court unless it be flagrantly and palpably against the evidence.

3. Railroads—Injury to Passenger—Rule as to Recovery.—The rule denying the right of passengers on trains and street cars to recover for injury occasioned by a fall from a car, except in cases "where the jerk is sudden, unusual, unnecessary and violent," has no application where the street car is brought to a stop for the purpose of allowing a passenger to alight and the passenger in the due exercise of care for his own safety is proceeding down the

steps in an effort to leave the car when he is thrown and injured by a sudden jerk of the car.

WALLACE MUIR and JOHN H. WELCH for appellant.

EVERETT B. HOOVER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellee, Sam Peel, a man about forty-one years of age, resident of Jessamine county, was thrown from an interurban car of appellant while alighting from the car in the city of Lexington, and severely injured. He sued for damages and recovered a verdict for $5,500.00 against the traction and terminal company, and the company prosecutes this appeal. It insists that the judgment entered on the verdict should be reversed, (1) because the verdict is not sustained by sufficient evidence; (2) the verdict appears to have been given under the influence of passion and prejudice; (3) the court erred in instructing the jury and in refusing to properly instruct it; (4) the court erred in overruling appellant's motion for peremptory instruction.

The evidence is very brief and there are but few controverted points. Appellee, Peel, testified that he boarded the car on Main street, in Lexington, as it was starting for Nicholasville; that he paid his fare to the conductor whom he knew and told the conductor that he desired to alight at Rose street, the first stop; that he then took a seat with some friends, Mr. and Mrs. Clark, and talked to them until the car arrived at Rose street, when he arose, went to the platform and from the platform on to the second step leading to the ground, the car yet standing; that suddenly and without warning to him the car jerked forward while he was in the act of stepping from same, and that he was thrown face foremost on to the paved street, inflicting injuries of which he complains. Peel is sustained in his evidence in part by Mrs. Clark, who testifies to his being on the car and leaving it, and in part by the conductor of the car, who says that Peel boarded the car on Main street, paid his fare and took a seat. Three men riding along the street in an automobile shortly after the car left Rose street found Peel lying unconscious on South Limestone street at or near its intersection with Rose street, at the point where the interurban car usually stopped, or at least near that point. Peel

was removed to his residence, where a physician was immediately called, his wounds examined and he was later taken to the hospital, where afterwards an operation was found to be necessary.

For the appellant company the conductor testified that while Peel entered the car, paid his fare and took a seat, he did not leave the car at Rose street; that the car stopped at Rose street for the purpose of allowing appellee Peel to alight, and that he looked to see if Peel was leaving the car, but that he did not see appellee and that the conductor went on to the platform and to the entrance of the car to see if appellee was there and looked on the steps, but that appellee was not on the steps nor on the car; that he then started the car and did not know what had become of Peel until some time next day when he learned of his injury. The motorman testified that he was sitting in the front end of the car facing a mirror so arranged that he could see the reflection of passengers, and that he did not see appellee Peel leave the car at Rose street, but that he could not see the second step from which Peel claims he was thrown. It is the theory of appellant company that Peel left the car before it arrived at the intersection of Rose street; that in doing so, he jumped, or undertook to leave the car while it was in motion in order to save walking back half a block to his residence, and in support of this theory the company contends that he was picked up some thirty to fifty feet back from the intersection. This is denied by Peel, who testifies emphatically and unequivocally that he did not get up from his seat in the car until it had stopped at Rose street and that he then walked out on to the platform and on to the steps and was about to alight from the car and was holding to a rod at the time the car started and he was thrown to the ground. There is some little discrepancy in the evidence as to where Peel was picked up with reference to the intersection of Rose and South Limestone streets, but all agree that it was either at or very close to the intersection of Rose street.

(1-2-4) Appellant's contentions Nos. 1, 2 and 4 may be considered together because they relate to the sufficiency of the evidence to support the verdict. From the brief statement of the evidence above, it will be perceived that there is more than a mere scintilla of evidence to support the verdict. While the conductor and motorman

testified positively that Peel was not on the car when it stopped at Rose street, Peel quite as positively says he was, and he is sustained in this in part by Mrs. Clark and by the physical fact that he was found lying on the street at this intersection. From this evidence the jury not unnaturally arrived at the conclusion that the accident happened as detailed by Peel. It was in their province, under the evidence of this case, to find the facts according to the weight of the evidence and credibility of the witnesses. The jury in watching the witnesses and considering their manner may have been entirely justified in believing the evidence of Peel to the exclusion of the evidence of the conductor who testified for the company. The evidence for the two parties on the point of how appellee left the car is so at variance that it could not well be reconciled, and the jury had the right to determine the facts, and we are of opinion that the evidence fully warranted the jury in determining that the accident happened as related by Peel and his witnesses.

(3) Appellant insists that instruction No. 1, given by the court to the jury, is erroneous in two respects: (a) it did not inform the jury that no finding could be made for the plaintiff unless the jerk which threw him from the car was unusual, unnecessary and violent; (b) it was indefinite in that it did not instruct the jury that it was the duty of the motorman to start, stop and otherwise control the car on signal from the conductor.

A passenger on a train or street car is not entitled to recover damages for injury sustained by a fall from the train, caused by a jerk, unless the jerk is sudden, unusual, unnecessary and violent, but that rule has no application to the facts of this case. Here the car was stopped by the conductor, according to his evidence, for the purpose of allowing appellee Peel to alight at Rose street. Mr. Peel says the car was so stopped, and that he was then in the act of alighting from the car when the car suddenly and without warning to him was jerked forward, throwing him violently against the ground, causing his injury. In such case it was the duty of the railroad company to allow the car to remain standing until the appellee had reasonable opportunity to alight therefrom, and it was negligence on the part of the employes of the company to start the car while Peel was in the act of alighting. There was no claim that Peel was negligently slow in leaving

the car. The court instructed the jury that if it believed from the evidence that Peel was on the steps of the car in the act of alighting, and further believed from the evidence that while in said act and before he had alighted, the car, without notice to the plaintiff and by the negligence of defendant's servants in charge of the same, was caused to suddenly start forward and by reason thereof the plaintiff was thrown from the car and injured, the verdict should be for the plaintiff. This very succinctly and clearly stated the law governing the case. It would have been improper to have instructed the jury that unless it believed from the evidence that the jerk which precipitated Peel from the car was sudden, unusual, unnecessary and violent, the verdict should be for the company.

If the servants, or either of them, in charge of the car negligently started or caused the car to start suddenly while appellee was alighting therefrom, and the negligence of the servant, or servants, in starting the car was the direct and proximate cause of the injury of appellee, then the company was liable and the instruction using the expression "defendant's servants" instead of designating the motorman or conductor, was sufficient and could not have misled the jury.

As there was abundant evidence to support the verdict of the jury, it necessarily follows there was sufficient evidence to warrant the court in submitting the case to the jury, and it is, therefore, unnecessary to further consider the alleged error of the court in overruling appellant's motion for peremptory instruction.

No error appearing to the prejudice of the substantial rights of appellant, the judgment is affirmed.