[Civ. No. 8712. First Appellate District, Division Two.—March 29, 1933.]

RICHARD KARSEY et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation) et al., Respondents.

.Hubbard & Hubbard for Appellants.

John J. O'Toole, City Attorney, Henry Heidelberg, Deputy City Attorney, and John R. Golden for Respondents.

SPENCE, Acting P. J.—Plaintiffs brought this action against the City and County of San Francisco and L. E. Boynton, its motorman, to recover damages arising out of personal injuries sustained by plaintiff Josephine Karsey, while riding as a passenger on a Municipal Street Railway car. The cause was tried by the court sitting with a jury. Upon motion of defendants made at the close of the testimony, the trial court directed the jury to return a verdict

in favor of defendants. From the judgment entered upon said directed verdict, plaintiffs appeal.

Plaintiff Josephine Karsey boarded an eastbound car on Geary Street at Octavia and said car again started on its way. After paying her fare said plaintiff proceeded through the rear open portion of the car and opened the door for the purpose of entering the closed portion thereof. After entering and while plaintiff was holding the door handle in the act of closing the door, the motorman "slugged" the car, bringing it to a sudden stop, thereby breaking plaintiff's hold on the door handle, throwing her violently to the floor and causing the injuries. There is no dispute concerning the manner in which the car was stopped. Both the motorman and conductor testified that the car was "slugged". When asked how the "slug" took that day the motorman stated that, "It took very good," and further stated that the car stopped in about 8 feet. The car came to a stop in the intersection of Geary and Franklin Streets. An inspector was called as a witness by defendants and he testified that a "slug" is the quickest way to stop a car. He explained the manner in which the "slug" is accomplished through the use of the reverse lever. He further stated that "slugging" a car causes it to stop "pretty abruptly". Counsel for defendants stated that Franklin Street is about 39 feet wide from curb to curb and then asked the inspector whether the stop would be unusually violent if the "slug" was applied at the curb line while the car was going 10 miles per hour and the stop was made at the center of the intersection. The inspector answered, "Not unusually violent, no." It will be noted that the motorman testified that the stop was made in about 8 feet while the last-mentioned testimony of the inspector involved a stop made in about 19½ feet. It therefore appears that the stop made by the car was not the ordinary sudden stop sometimes made by means of the application of air-brakes but was an unusual and violent stop made by means of "slugging".

The only eye-witnesses produced upon the trial were plaintiff Josephine Karsey, the defendant motorman and the conductor. Plaintiffs rested after introducing testimony showing that plaintiff Josephine Karsey while riding as a fare-paying passenger was thrown to the floor and was injured by the sudden stopping of the car as above described. De-

fendants then introduced testimony in an attempt to explain the unusual and violent stop which was made. This testimony was offered to show that the stop was made in the manner described in order to avoid a collision with a Ford automobile which was proceeding in a southerly direction along Franklin Street.

Appellants contend that the trial court erred in directing a verdict in favor of respondents and in our opinion this contention must be sustained. In support of the action of the trial court respondents argue that the doctrine of *res ipsa loquitur* is inapplicable to the facts in the present case. This argument is based upon the assumption that the stop was one of the usual types of more or less sudden stops which are made by street-cars every day. This assumption is not warranted by the evidence, which shows that the stop was both unusual and violent. Even the inspector, whose testimony was directed to a stop made in 19½ feet rather than a stop made in 8 feet, went no further than to describe a stop made in that distance by means of "slugging" as not "unusually violent". It may be inferred from said testimony offered by respondents that a stop made in 19½ feet would be both unusual and violent, although not necessarily "unusually violent", and there can be no doubt as to the nature of the stop in question, which was made in less than half that distance. Whatever conflict of authority exists regarding the applicability of the doctrine of *res ipsa loquitur* to cases involving the usual jolts and jerks ordinarily incident to the operation of street railway cars, the great weight of authority supports the view that the doctrine is applicable when the jolt or jerk may be said to be unusual or violent. (See numerous authorities cited in the following notes: 7 L. R. A. (N. S.) 1076; 13 L. R. A. (N. S.) 601; 29 L. R. A. (N. S.) 808; L. R. A. 1916C, 364; see, also, 4 Cal. Jur. 980, and following and cases cited.) The distinction between the two classes of cases is referred to in many of the authorities cited and relied upon by respondents herein. (*Partelow* v. *Newton & B. St. Ry. Co.*, 196 Mass. 24 [81 N. E. 894]; *Kentucky Traction & Terminal Co.* v. *Peel*, 185 Ky. 207 [214 S. W. 874]; *Ottinger* v. *Detroit United Ry.*, 166 Mich. 106 [131 N. W. 528, 34 L. R. A. (N. S.) 225]; *Vincent* v. *New Orleans Ry. & L. Co.*, 134 La. 654 [64 So. 654];

*Boston Elevated Ry. Co.* v. *Smith,* 168 Fed. 628 [23 L. R. A. (N. S.) 890]; *Ewing* v. *Wichita R. & Light Co.,* 91 Kan. 388 [137 Pac. 940].) We are, therefore, of the opinion that the doctrine of *res ipsa loquitur* was applicable in the present case.

Respondents further argue that even conceding that doctrine to be applicable, it merely placed upon defendants the burden of going forward with evidence in explanation of their conduct and "having explained their conduct, the defendants have done all required of them by the doctrine". Thereupon respondents apparently draw the conclusion that a directed verdict in their favor was proper, stating that "there is nowhere to be found a case holding that the presence of the doctrine prevents a directed verdict". We are not called upon to decide the question of whether a directed verdict in favor of a defendant should ever be granted in a case where the plaintiff has made out a *prima facie* case under the doctrine referred to. ▮ There is no doubt, however, that the question of whether a defendant has made the showing required to rebut such *prima facie* case (*Scarborough* v. *Urgo,* 191 Cal. 341 [216 Pac. 584]; 19 Cal. Jur. 719) is ordinarily one for the jury. (*Lauder* v. *Currier,* 3 Cal. App. 28 [84 Pac. 217]; 10 C. J. 1069, and cases cited.) And it is clearly a question for the jury where the evidence produced by way of explanation, even though uncontradicted, is such that reasonable minds might draw different conclusions as to whether or not such evidence shows negligence on the part of the defendant. (19 Cal. Jur. 726.) ▮ In the present case the respondent motorman testified that he knew that Franklin Street was "a very dangerous street" with heavy traffic thereon; that he was going down a slight grade at about ten miles per hour as he entered the intersection; that he saw the Ford automobile when the front end of the street-car was just about even with the westerly property line on Franklin Street; that the Ford was traveling at about 20 to 25 miles per hour; that he had plenty of time to stop the street-car before he went into the intersection; but that he nevertheless proceeded without stopping and intended to go through the intersection ahead of the Ford, although he knew that if the Ford continued without stopping a collision would occur. His testimony was somewhat ambiguous and incon-

sistent regarding the position of the Ford with relation to certain fixed objects when he first saw it, but he definitely stated that the Ford traveled about 30 feet from the time he first saw it until it passed in front of the street-car. There is no evidence that the Ford decreased its speed or showed any sign of stopping at any time, but on the contrary the motorman testified that it increased its speed and swung to the left in passing in front of the street-car. The jury could have accepted the motorman's testimony as to speeds and distances and could have concluded that he used poor judgment in attempting to cross the intersection ahead of the Ford, which he had seen traveling at from 20 to 25 miles per hour at a distance of 30 feet from the track; or, on the other hand, the jury could have rejected as improbable the estimate of the speed at which the street-car entered this "dangerous" intersection and concluded that the speed was too great, thereby necessitating a stop by "slugging" as soon as the Ford was first seen by the motorman. In either case the jury could have properly concluded that even though the driver of the Ford may have been negligent, the motorman failed to exercise the "utmost care and diligence" for the safety of his passengers as he was required to do. (Civ. Code, sec. 2100; *Forsythe* v. *Los Angeles Ry. Co.*, 149 Cal. 569 [87 Pac. 24]; *Dorr* v. *Lehigh Valley Ry. Co.*, 211 N. Y. 369 [105 N. E. 652, Ann. Cas. 1915C, 763, L. R. A. 1915D, 368]; *Fetherstone* v. *Cleveland R. Co.*, 32 Ohio App. 93 [167 N. E. 606]; *Adelsperger* v. *City of Detroit*, 248 Mich. 399 [227 N. W. 694].)

Respondents further contend that appellant Josephine Karsey was "clearly guilty of contributory negligence". We find no merit in this contention. It is based upon the fact that the injured woman had remained on her feet for two blocks after boarding the street-car and upon the claim that she assumed "the risks of sudden stops, etc., which are ordinary incidents of transportation by street-cars". We know of no rule of law which compels a passenger at her peril to take a seat within any fixed distance after boarding a street-car nor which compels a standing passenger to assume the risk of an unusual and violent stop such as was made in the present case. Reviewing the record we doubt whether there is any evidence tending to show contributory negligence on the part of the injured woman,

but it is certain that it cannot be said that she was chargeable with contributory negligence as a matter of law.

From what has been said it follows that the trial court should not have directed a verdict in favor of respondents and that the cause should have been submitted to the jury under appropriate instructions.

The judgment is reversed.

Sturtevant, J., and Goodell, J., *pro tem.*, concurred.