[L. A. No. 15751. In Bank.—July 28, 1936.]

COLIN McINTOSH, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Frank Karr, E. E. Morris, C. W. Cornell and O. O. Collins, as *Amici Curiae* on Behalf of Appellant.

Meserve. Mumper, Hughes & Robertson and Baldwin Robertson for Respondent.

CURTIS, J.—Plaintiff recovered judgment against the defendant for injuries sustained by him while a passenger in one of defendant's street cars operated in the city of Los Angeles. The defendant has appealed from the judgment upon a bill of exceptions. The two grounds urged by appellant for a reversal of the judgment are the insufficiency of the evidence, and the excessive amount of the judgment.

The appellant owns and operates a system of electric street cars in the city of Los Angeles. One line of said system runs on and along McClintock Avenue in a generally northerly and southerly direction. McClintock Avenue is intersected practically at right angles by Thirty-second Street. The latter street is one short block north of Jefferson Street which also runs in an easterly and westerly direc-

tion. Respondent was a passenger in one of appellant's street cars as it traveled south on McClintock Avenue. The route of this particular line upon which the street car was traveling was southerly on McClintock Avenue to Thirty-second Street and thence to Jefferson Street. The track on McClintock Avenue as it nears Jefferson Street has a curve of about 50 to 60 degrees. As the car in which respondent was riding left Thirty-second Street, respondent, who was seated in the main section of the car, arose from his seat for the purpose of leaving the car when it made a stop at Jefferson Street. He passed through the door of the car which separates the enclosed compartment from the front section of the car. After passing through the door, and while the car was rounding the curve, he was thrown out of the window of the car so that his body from his hips down was hanging out of the car with his hands only a few inches from the ground. In this position he was carried by the street car until it made its regular stop at Jefferson Street, a distance of from 150 to 160 feet. Apparently neither the conductor nor the motorman on the street car saw respondent hanging from the window of the car until after the car stopped. Some of the passengers on the car came to the respondent's rescue and with their assistance he was drawn back into the car. Respondent sustained injuries as a result of his flight through the window, and seeks by this action to recover damages for such injuries. We quote from the testimony of the respondent the following excerpts:

" . . . I sat in the main body of the car and was reading the 'Examiner', read it all the way out and when we were approaching the transfer point, I got up and went out the door and I opened that door and I don't think—I can't tell—it was so quick, I probably took one or two steps, may not have taken any, and the next thing I knew, without any premonition that it was going to happen, I was hanging out of the window. It just threw me this way [indicating]. This occurred at Point A shown on the curve on this plat. I had ridden on this car on many other occasions prior to this time. . . .

"He was going at a much greater speed than usual. . . .

"When the body of the car struck that curve, it simply lurched. It changes its position through the rotation of

the wheels, it changes the position of the tires and the wheels and the wheel base. . . . The centrifugal force of the car going around the curve—the gradual throwing off in that direction just simply threw me just by the centrifugal force from it going around that curve. . . .

"I had been traveling on this U line for some time. I was fully aware there was a curve there as the car came down 32nd and turned down McClintock. I knew there was a sway and lurch of the car as it went around the curve. . . .

"When I went out of the car, I had just opened the door and passed through to the front end and turned from the door and the next thing I knew I was hanging outside."

These excerpts we have taken from the brief of the appellant, and we may well assume, as appellant does not question the truth of any statement contained therein, that they furnish a correct account of the accident which resulted in respondent's injury.

■ It is conceded that appellant in the operation of its street car system is a common carrier of persons and that respondent was at the time of his injury a passenger in one of its cars. Appellant, however, contends that even under the rule applicable to the injury of a passenger while riding in the conveyance of a common carrier, there is no evidence in this case which shows, or tends to show, that appellant was guilty of any negligence in the operation of its car in which the respondent was riding at the time of his injury. Appellant points out that the only statements to be found in the above-quoted evidence of respondent which in any way tends to show that the car was being operated in an unusual manner were: "He [the motorman] was going at a much greater speed than usual" and "When the body of the car struck that curve it simply lurched," and argues that such expressions or similar expressions such as "very fast" or "pretty fast" are entirely too uncertain upon which to predicate a finding as to the speed at which the car was traveling or that such speed was in excess of the maximum rate which would be dictated by the demands of ordinary prudence. (*Diamond* v. *Weyerhaeuser*, 178 Cal. 540, 543 [174 Pac. 38].) Assuming that appellant is correct as to this proposition of law, we think the further fact, established by the evidence of respondent, that as he passed

through the door leading to the front of the car, he was thrown. through the car window by the lurch of the car as it rounded the curve, has an important bearing upon the question as to the movement of the car and the manner in which it was being operated at the time. Appellant insists that it is not responsible for injuries sustained by its passengers from the ordinary movement or operation of its cars. But we think that when it is shown that a passenger as he walks down the aisle of the car is thrown out of the car window, at least an inference may be drawn from this evidence that the car was not being operated in its ordinary and usual manner. Such evidence in our opinion establishes a *prima facie* case in favor of respondent, and unless it is overcome to the satisfaction of the jury, it is sufficient to support a judgment in favor of the passenger.

While it is true that a mere injury to a passenger does not place upon the carrier the duty of explanation, such proof, however, coupled with evidence that the injury was caused by an unusual movement of the car, does cast upon the carrier the burden of proving that the injury was due to some other cause than its own negligence. (*Rystinki* v. *Central California Traction Co.*, 175 Cal. 336, 344 [165 Pac. 952]; *Lynch* v. *Market Street Ry. Co.*, 130 Cal. App. 433, 438 [19 Pac. (2d) 1009]; *Karsey* v. *San Francisco*, 130 Cal. App. 655, 658 [20 Pac. (2d) 751].)

In determining whether the movement of the car was so unusual as to show negligence on the part of the appellant in its operation, the nature of the accident and the effect of the car's movement upon the passenger may be taken into consideration. (*Rust* v. *Springfield Street Ry. Co.*, 217 Mass. 116 [104 N. E. 367].) In that case there was evidence to show that the plaintiff, while sitting upon the end seat of an open car, was thrown upon the running board and then out into the street, a distance of nearly fifteen feet, by reason of a violent jerk of the car. It was held that the jury could have found from these physical facts that the jerk which threw her off was much greater and more violent than is usual and was evidence of negligence of the motorman. In commenting upon that case and another case very similar thereto, the Supreme Judicial Court of Massachusetts makes this statement:

"In the two cases last referred to there was evidence of certain physical facts which ordinarily do not occur when a car is carefully operated, and which warranted the conclusion that the injuries received by the plaintiffs were not due to the ordinary jerks and jolts or swaying incident to the ordinary operation of an electric car, but were the result of negligence on the part if the motorman."

In passing we should say that the appellant relies with considerable assurance upon the case of *Anderson* v. *Boston Elevated Ry. Co.*, 220 Mass. 28 [107 N. E. 376, 377], in support of its claim that the evidence in the present action fails to establish any negligence on its part in the operation of its car. Appellant states that the case just cited is similar to the instant case in that the plaintiff therein, a passenger, was injured by being "thrown through the window glass when the car rounded a curve". This statement finds no warrant from anything appearing in the opinion in that case. In the statement of facts in that case it appears that "the car came to a stop, and that she [the plaintiff] had taken two or three steps toward the forward end of the car before the jerk came; that her right hand went through the second window from the front on the right-hand side of the car opposite the seat there that runs lengthwise". In the main portion of the opinion, the court in commenting on this evidence makes the following statement: "There are no physical facts from which such negligence can be inferred. That the plaintiff lost her balance and her hand went through the window is no stronger evidence of negligence in the operation of the car than if, in falling, she had placed it against any other part of the car." There is a vast difference in the severity of a jerk or lunge of a car which results simply in a passenger's hand being thrown against some part of the car or out of the car window and one which catapults a passenger head first through a car window and leaves him hanging by his hips with his hands within a few inches from the ground. In our opinion, the facts in the cited case are so different from those in the instant case as to render the former of slight, if any, value in the determination of the question of the appellant's negligence.

We are in perfect accord with the decisions cited by appellant which hold that ordinary street or electric cars

are liable to start with more or less of a sudden lurch or jerk; that some swaying is inherent and unavoidable in any moving car; that passengers in such cars must assume these ordinary risks when they voluntarily enter a car for the purpose of being transported therein; and that any injury sustained by a passenger by such ordinary movements of the car cannot be attributed to the negligent operation of the car. But this case, however, is not one of those, but belongs to that class of cases where the evidence shows that the passenger was injured by some unusual movement of the car while it was being operated by the carrier. ■ In this class of cases, the authorities are uniform in holding that evidence that a passenger has been injured as a result of the unusual movement of a car while being operated by the carrier casts upon the carrier the burden of showing that the passenger's injury was not due to the negligence of the carrier. (*Rystinki* v. *Central California Traction Co.*, *supra*.) The question of the carrier's negligence then becomes a question for the jury, and its determination thereof will not be disturbed by an appellate court. The contention of appellant that the verdict of the jury in this case is not supported by the evidence cannot be sustained.

■ It is further contended that the verdict of $3,000 in favor of the respondent is excessive. While it cannot be said that the evidence as to damages preponderates to any great extent in favor of the respondent, yet there is substantial evidence in the record which tends to support the verdict in that respect. This was sufficient to satisfy the jury and also the trial court on motion for a new trial. There is nothing in the record to indicate that the verdict was given under the influence of passion or prejudice. "A new trial may not be granted merely because the verdict seems large, or because it is larger than the court, if sitting as a jury, would have given, but only when it appears that it was 'given under the influence of passion or prejudice'; in other words, the verdict will not be disturbed as excessive unless the damages awarded are so excessive as to indicate that the jury acted under such influences." (20 Cal. Jur. 101.)

The judgment is affirmed.

Shenk, J., Seawell, J., Langdon, J., Waste, C. J., and Thompson, J., concurred.