No. 31,410

Alice M. Clarke, *Appellee*, v. The Cardinal Stage Lines, Inc., *Appellant*.

(31 P. 2d 1.)

Opinion
filed April 7, 1934.

Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman, all of Topeka, William J. Scott and Thornton D. Scott, both of Abilene, for the appellant.

R. H. Seeds and Matt Guilfoyle, both of Abilene, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff while a passenger in defendant's bus which broke down on a public highway.

Defendant operates a stage line of passenger busses in this state. In June, 1930, plaintiff, a teacher in the University of Denver, was traveling by stage to New York to take a summer course in Columbia University. On June 23 she became a passenger on defendant's bus, and while it was traveling at forty miles per hour on the highway between Lindsborg and Salina, the front axle broke, the bus left the road, and plaintiff was thrown out and rendered unconscious. When picked up she was found to be cut about the head and thigh; her eyeglasses were broken; her clothing was cut and ruined and soaked with blood. She was taken first to Lindsborg and later to a hotel in Salina for emergency treatment. Later it was discovered that particles of broken glass had entered her eye; and next day she discovered that she had lost her denture in the accident.

A few hours after the accident an agent of defendant called on plaintiff at the hotel in Salina, and effected a settlement with her for her damages for the sum of $75, which he paid her. She bought a trunk and some clothing in Salina and next day continued her journey to New York. Having completed her summer course at Columbia she returned to Denver and resumed her work as a teacher, but in November she was compelled to go to a hospital where she was operated on for exophthalmic goiter. This incapacitated her until the following February, but eventually she was restored to health and resumed her school work.

In September, 1931, she commenced this action, charging defendant with negligence as follows:

(a) "By reason of the carelessness and negligence of said defendant company in using and operating a bus for the transportation of passengers that was unfit and unsafe for said purpose."

(b) "Said plaintiff says she does not know and it is not within her knowledge whether the breakdown was caused by improper and defective equipment, or the improper, negligent and careless driving by the party operating said bus, but that the same is within the knowledge of the defendant company."

Plaintiff alleged that in the breakdown of the bus she was seriously injured, and that her goiter affliction was a consequence of the injuries she had sustained, including her pain and suffering, hospital bills, and loss of time incident thereto.

Defendant's answer was a general denial and an affirmative plea of accord and satisfaction and the execution of a release by plaintiff in full for all injuries and damages.

Plaintiff's reply alleged that at the time she executed the release, which was written a few hours after the accident, she was in a state of great mental excitement and shock as a result of her injuries, and did not realize the extent of her injuries; that in the accident she lost her eyeglasses and could not read, and that she believed defendant's agent was offering to assist her to continue her journey and that he wanted to pay for her damaged clothing and baggage, and that the instrument he presented for her signature only related to reimbursement for her loss of clothing and baggage. Plaintiff also alleged that at the time she signed the release she did not know the extent and character of her injuries. At the trial and after plaintiff had rested, the court gave permission over defendant's objection to amend her reply "to conform to the evidence" respecting her condition at the time she executed the release by interpolating—

"Which condition continued until after the execution of the purported release and it was apparent to defendant's agent at said time that she was incapable of transacting business and that neither she nor defendant's agent knew at that time that she had any personal injury except a few cuts and bruises which they both believed would pass away within a day or two and that she would suffer no further ill effects therefrom."

The cause was tried at length before a jury. Four doctors testified in substance that the "trauma arising from the bus accident was the exciting factor in precipitating the goiter."

Defendant prepared twenty-one special questions, but the court only permitted ten to be submitted to the jury. Of these the jury answered eight, viz.:

"1. Did the plaintiff have an opportunity to read the release before she signed it? Yes.

"2. Was the plaintiff in possession of her faculties when she signed the release? No.

"3. If you answer 'no' then please state what faculties she did not have. Reasoning power.

"4. Did the defendant or its agent, Mr. Patterson, or any representative of the defendant make any false, misleading or fraudulent statements to the plaintiff in order to get her to sign the release, or upon which the plaintiff relied in signing said release? No.

.    .    .    .    .    .    .    .    .    .    .    .

"6. Did the defendant use a high degree of care and skill in the operation and maintenance of the bus in which the plaintiff was riding at the time of the accident? Yes.

.    .    .    .    .    .    .    .    .    .    .    .

"8. Had the plaintiff sustained a shock to her nervous system as a result of the accident of June 23, 1930, at the time she signed the release in question? Yes.

"9. Do you find that the illness of the plaintiff before the accident as shown by the evidence has contributed to her present condition? No.

"10. If you find for the plaintiff, please state how much you allow for—

"a. Medical and surgical expense............................. $942.65

"b. Pain and suffering ...................................... $2,482.35

"c. Permanent injury ....................................... nothing."

The jury returned a general verdict for plaintiff for $3,500, less $75 allowed as a credit, and judgment was entered accordingly.

Defendant appeals, urging several errors which will be noted:

It is first contended that plaintiff charged defendant with specific negligence and therefore could not avail herself of the doctrine of *res ipsa loquitur*. This contention is only partly correct. She could not rely on that doctrine to prove allegations of specific negligence (*Byland v. Powder Co.*, 93 Kan. 288, 144 Pac. 251) nor invoke that doctrine to supplement whatever other evidence she might adduce to prove any charge she made of specific negligence (*Ratliffe v. Wesley Hospital*, 135 Kan. 306, 10 P. 2d 859). However, plaintiff was privileged to plead both ways—specific negligence, and the fact and character of the accident; and she could abandon the charge of specific negligence if no evidence to prove it were available. But since she had also tendered an issue based solely on the character and fact of the accident and its consequences, alleging that she did not know what caused it, she was entitled to invoke the rule of *res ipsa loquitur* on that issue. Of course defendant might have moved to require her to elect whether she would rely for recovery on the specific negligence charged, or on the character and fact of the accident alone. It must be noted, also, that while defendant has argued this point as if plaintiff's allegations of negligence were spe-

cific, when critically examined they are seen to be merely general. Plaintiff does not specifically state in what respect defendant was guilty of carelessness and negligence nor in what respect the bus was unfit and unsafe for the transportation of passengers. In *Woods v. Kansas City, K. V. & W. Rld. Co.*, 134 Kan. 755, 760, 8 P. 2d 404, plaintiff similarly charged negligence in broad general terms and that she was injured in consequence, but, although she could adduce no evidence to prove specific negligence, she was not deprived of the benefit of the rule of *res ipsa loquitur.*

In *McDonough v. Boston Elevated Railway*, 208 Mass. 436, where the declaration in an action of tort for personal injuries by a passenger against a street railway company alleged generally that the injuries were caused by negligence of the defendant, and, in response to a motion for specifications of negligence, the plaintiff, after specifying some particulars, added, "And the plaintiff further says that he is unable to further specify as to the negligence of the defendant," it was held that the plaintiff is not precluded from relying on the rule of *res ipsa loquitur* although he has introduced no evidence to warrant a finding that the defendant was negligent in any of the particulars that he specified.

In *May Department Stores Co. v. Bell*, 61 F. 2d 830, it was held that although a plaintiff charging specific negligence could not have the benefit of *res ipsa loquitur*, he was not deprived of its benefit because he pleaded the existence of a specific defect which was due to the general negligence of defendant.

In *Barger v. Chelpon* (S. D., 1932), 243 N. W. 97, which was an automobile accident case, plaintiff alleged that defendant operated his car in a "negligent and careless manner," and that defendant knew that the car contained "defective parts and mechanism and many parts that were worn out." There was no evidence to sustain any of those allegations, and no showing of negligence unless the doctrine of *res ipsa loquitur* applied. The trial court directed a verdict for defendant, and plaintiff appealed. The supreme court reversed the judgment, and in the course of its opinion said:

"The defendant contends that the complaint pleads specific acts of negligence, and consequently the doctrine of *res ipsa loquitur* can have no application. There is considerable conflict in the authorities as to the effect of a pleading setting forth specific acts of negligence on the right of the plaintiff to rely on or invoke the doctrine under consideration. In some jurisdictions an absolute rule is established to the effect that, where specific acts of negli-

gence are pleaded, the plaintiff cannot invoke the doctrine, and that this is the effect of specific allegations of negligence, though the complaint also contains allegations of general negligence. The specific allegations are construed to supersede or limit the general allegations, and the plaintiff, having indicated by his complaint that he has knowledge of the specific negligent acts causing the injury, cannot rely upon any inference of negligence. (Citations.) In other jurisdictions a plaintiff is not deprived of the right to invoke the rule where specific acts of negligence merely are alleged. It is said that the plaintiff is only required to prove facts essential to a recovery, and is not deprived of the benefit of the doctrine merely because he alleges a stronger case than he is able to prove. (Citations.) However, in other jurisdictions a plaintiff is not denied the right to rely upon the doctrine, though he alleges specific acts of negligence and fails to substantiate these specific acts, if he also alleges negligence in general terms. The allegations of the specific acts of negligence, while not depriving plaintiff of the benefit of the doctrine, relieves the defendant from the burden of disproving or meeting any other negligent acts than those alleged. (*Roberts v. Sierra R. Co.*, 14 Cal. App. 180, 111 Pac. 519, 527; *Washington-Virginia R. Co. v. Bouknight,* 113 Va. 696, 75 S. E. 1032, Ann. Cas. 1913E, 546; *De Roire v. Lehigh Valley Ry. Co.*, 205 App. Div. 549, 199 N. Y. S. 652; *Kleinman v. Banner Laundry Co.,* 150 Minn. 515, 186 N. W. 123, 23 A. L. R. 479.)" (p. 99.)

In the recent case of *Monkhouse v. Johns* (La. App. 1932), 142 So. 347, it was held that a plaintiff is not deprived of the benefit of the doctrine of *res ipsa loquitur* merely because he is not altogether ignorant of the cause of the accident. In *Queirolo v. Pacific Gas & Electric Co.*, 114 Cal. App. 610, it was held that while the *res ipsa* doctrine could not be applied to support allegations of specific negligence, yet where plaintiff had no knowledge of the cause of the accident and was therefore compelled to allege negligence in general terms, the doctrine could be invoked, especially where the particular act of negligence complained of was one which the legal inference tended to establish. And in *Chaisson v. Williams*, 130 Maine 341, it was said:

"The character of the accident, rather than the fact of accident, decides, as a legal proposition, whether the doctrine applies."

In *Kenny v. Antoinette*, 211 Cal. 336, it was said:

"The theory of the doctrine of *res ipsa loquitur* is that a defendant in charge of an instrumentality which causes injury either knows the cause of the accident or has the best opportunity of ascertaining it, and. the plaintiff, having no such knowledge, is compelled to allege negligence in general terms and to rely upon proof of the happening of the accident in order to establish it." (Syl. ¶ 3.)

See, also, *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648,

249 Pac. 599, where our earlier cases and others on this subject are collated and treated at length.

It is next contended that the evidence was insufficient to take the case to the jury under the rule of *res ipsa loquitur*. Plaintiff's evidence clearly and without dispute established the fact and the "character" of the accident (*Chaisson v. Williams*, supra), and the "manner and circumstances" of her injury (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 651, and citations, 249 Pac. 599), and certainly the breakdown of a passenger bus on a good road in the daytime with no external cause known or surmised made a *prima facie* case for the application of the *res ipsa* doctrine. The substance of many dissertations touching that doctrine is that when an accident happens to some mechanical instrumentality which in common experience does not happen without somebody's fault, and when there is no available evidence to prove the cause of it, the triers of fact are justified in drawing an inference that the accident was due to the negligence of the defendant who operated it. Thus, in *Graham v. Badger*, 164 Mass. 42, 47, it was said:

". . . *Res ipsa loquitur*, which is merely a short way of saying that, so far as the court can see, the jury from their experience as men of the world may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believes, that it happened in consequence of negligence in this case. Presumptions of fact, or those general propositions of experience which form the major premises of particular conclusions of this sort, usually are for the jury. The court ordinarily confines itself to considering whether it can say that there is no such presumption, or in other words, that such accidents commonly are not due to negligence." (See, also, 13 Boston Univ. Law Rev., 50 *et seq.*)

Defendant next complains that the court erroneously excluded proffered evidence that the cause of the accident, which was the breaking of the front axle of the bus, was due to crystallization, and that such defect was a latent one of which defendant was unaware and one not discoverable by means of the usual tests, inspections and examinations. This point cannot be sustained. The evidence of the breaking of the axle due to crystallization went in without objection, but defendant offered no competent evidence that the condition of the axle could not have been discovered. Indeed, the court dealt quite considerately with defendant's witness who was called to testify on that point. The record reads:

"Q. Did you ever test this axle to determine or find out if it had become crystallized? A. No, we have no way; we have no way to do that in our shop.

. . . . . . . . . . . . . . . .

"THE COURT: Do you know whether there is any way of determining whether or not an axle is crystallized? A. You can't see it from the outside.

"Q. I am not asking you whether or not you can see it; I am asking you whether or not there is any way of determining it. A. Not with the brakes.

"Q. Well, I am not asking you whether there is any way of determining it that way; is there any way whatever of determining it; do you know whether there is? A. No, I don't."

The next error assigned relates to the court's omission to instruct the jury touching the right of defendant to rebut the presumption of negligence raised · by the application of the doctrine of *res ipsa loquitur*. But we do not find any evidence offered by defendant to rebut that presumption. True, the trial court delivered no discourse on the doctrine encased in its Latin·phraseology—which would have been mere supererogation to a jury of laymen—but we cannot discern in what respect that omission prejudiced the defendant. Attention is directed to the trial court's point of view when overruling some *post verdict* motions presented by defendant. The court said:

"I think that the doctrine of *res ipsa loquitur* applied in this case under the facts as they were undisputed. If a person is a passenger upon a railway and there is an accident and it comes from a broken axle and no skillful examination could have disclosed that broken axle, that doesn't relieve the company from liability."

Another point urged by defendant relates to the ruling which permitted plaintiff to amend her reply in which she pleaded a mutual mistake of herself and defendant's agent as to the extent of her injuries when they made the "hurry-up" settlement a few hours after the accident. The ruling was a discretionary one, and we cannot disturb it, especially since it was merely made to conform to the evidence and plaintiff offered no further evidence on the matter after the belated amendment was allowed.

Among other points suggested by defendant is one that the findings 2 and 3 were not sustained by the evidence. We think they were, but deem it needless to quote the record here. Finding No. 6 did not entitle defendant to judgment; nor was finding No. 4 necessarily in conflict with the general verdict. The error based on the court's refusal to submit more than ten special questions to the jury is not sustained.

Another objection to the judgment is based on the trial court's omission to instruct on the burden of proof. However, when the issues of fact were made up, defendant's answer admitted the controlling facts of the accident and of plaintiff's injuries. The court did instruct that the release was binding on plaintiff unless she showed by clear, decisive, and satisfactory evidence that there was a mutual mistake of a fact material to the contract and not a mere mistake in prophecy or belief as to probable developments from any injury sustained by her. Elsewhere the court told the jury that mere inadequacy of compensation for her injuries and an improvident settlement would not relieve plaintiff from its binding force.

The court did, however, tell the jury that if plaintiff was entitled to avoid the release, she was entitled to recover for such sum as "in your judgment will compensate her for the pain, suffering and disability which resulted directly from said accident. . . . if you find that the plaintiff is entitled to recover therefor." If there was anything to criticize in the instructions given or refused, it should be traced, we think, to defendant's insistence on the giving of a long list of entirely irrelevant instructions and the little amount of helpful criticism it gave the court touching the instructions given. Counsel insist that the rule of *res ipsa* was not in the case until the trial court itself suggested it, but allegation (b) of the petition quoted above makes it clear that an issue where that doctrine would be relied on was in the case from its inception.

There is no prejudicial error in the record and the judgment is affirmed.