No. 35,430

Lelah McQuin, *Appellee*, v. The Santa Fe Trail Transportation Company, and Massachusetts Bonding and Insurance Company, *Appellants.*

(122 P. 2d 787)

Opinion filed March 7, 1942.

*George B. Powers,* of Wichita, and *R. D. Hudson,* of Tulsa, Okla., argued the cause, and *Robert C. Foulston, George Siefkin, Samuel E. Bartlett, Lester L. Morris, Carl T. Smith, C. H. Morris, John F. Eberhardt, J. W. Blood, C. Zimmerman,* all of Wichita, were on the briefs for the appellants.

*Wayne Coulson,* of Wichita, argued the cause, and *Otho W. Lomax,* of Topeka, *C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe* and *Paul R. Kitch,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for personal injuries alleged to have been sustained when plaintiff, who was a passenger on a bus being operated by defendant, was thrown from her seat on account of the bus coming to a sudden stop. Judgment was for the plaintiff. Defendant appeals.

The petition, after the formal allegations, alleged that plaintiff was a passenger on a bus of defendant traveling from Garden City

to Topeka via Wichita; that shortly before daylight on July 17, 1939, the driver of the bus, with sudden and unexpected violence, brought it to a violent and sudden stop; that plaintiff was thrown from her seat in a cramped and twisted position and injured. The petition then set out various specific particulars in which the defendant was negligent and that the plaintiff could not state the exact particulars in which the bus was defective for the reason that she did not know them, but that she did know that it was an old bus used only for relief purposes and that by reason of its age and general worn-out condition it jerked and stopped with unusual violence when the brakes were applied.

The answer of the bus company was a general denial and a specific denial that on the morning in question the bus was brought to a sudden stop between Dodge City and Wichita or that plaintiff was thrown forward and injured. The answer also specifically denied all the allegations of the petition as to the negligence of the defendant or the defective condition of the bus.

The insurance company which carried the public liability insurance on the bus made substantially the same answer.

The reply was a general denial of all new matter.

The plaintiff testified that she boarded the bus at Garden City July 16 at eleven o'clock in the evening with her children. "I observed the bus when I started to get on it. There were not plenty of seats. There were two vacant seats, one on the back seat next to the long seat on the back, and the other directly behind the driver. My two boys took the farthest seat back and the baby and I sat in the front seat directly behind the driver. The driver was in uniform and I had conversation with him. He looked very much like the middle man back there in the court room, but I don't know for sure, I said to him: 'This is certainly a dilapidated bus. You must have gotten it out of the Ark.' He said: 'Lady, I am just as sorry as you are that we have to travel on this bus tonight.'" She testified further: "I was sitting in as relaxed a position as I could with Beverly asleep with her head in my lap, and I was about half asleep, when suddenly the bus stopped with an awful jerk; it just rattled and sounded like the bus was falling apart and it frightened me and threw me forward until I lunged, and Beverly fell clear off the seat. I held my right foot on something that was built up between the other seat and the long back seat, and I twisted myself in a position trying to catch her, and it threw me this way and in so

doing I felt something pop down in this region inside of me, and my back began hurting me terribly." She testified further: "I saw him go around the bus and climb up on the bus right back of where we were on a ladder and then he came back down again, came in, and started the bus, and we went on our trip." She also testified: "When I got on at Garden City, at the Hotel Warren, all the bus seats were taken except two. I boarded the bus on the night of July 16, 1939. All I know about the bus stopping is that it stopped violently. It was in the country, before daylight, and completely dark."

Her twelve-year-old son testified to the same general effect.

It was stipulated that the bus was due out of Garden City at 10:52 p. m. and due in Wichita at 5:50 a. m. on July 17, and that it was not a new bus and was kept at Lamar to take the place of any bus that went out between certain points.

The demurrer of defendant to the evidence of plaintiff was overruled.

At this point the defendants moved the court to require the plaintiff to elect whether she was proceeding under the doctrine of res ipsa loquitur or under the theory that she had established specific acts of negligence against defendant.

The trial court reserved its ruling on this motion until after the introduction of the evidence of defendant.

On account of the argument made by defendant on this appeal we have very little concern with the evidence of defendant. There was evidence, however, as to repair work that had been done on this particular bus. The bus driver testified that he knew nothing about a sudden stop that night and if there had been such a stop as that about which the plaintiff testified he would have remembered it.

At the close of defendant's evidence the motion of defendant to require plaintiff to elect was sustained. She elected to stand upon the doctrine of res ipsa loquitur. Motion of defendants for an instructed verdict was overruled.

The jury returned a verdict for plaintiff. Motion for a new trial was overruled. Hence this appeal.

Because of plaintiff's argument that the scope of the appeal is limited, the steps taken subsequent to the return of the verdict will be noted in some detail. This matter will be disposed of before considering the merits.

The verdict was returned on May 14, 1941. Within due time the motion for a new trial was filed. On September 10, 1941, the trial

court overruled the motion for a new trial. The journal entry of judgment was filed September 10, 1941. On September 23, 1941, defendants served notice of appeal from the judgment rendered on May 13, 1941. There was no appeal from the order overruling the motion for a new trial.

The plaintiff argues that this court is without jurisdiction because the notice of appeal was not filed within two months from the date of the judgment from which the appeal was taken.

In this connection plaintiff cites G. S. 1935, 60-3117. That section reads as follows:

"When a trial by jury has been had, judgment must be entered by the clerk in conformity to the verdict, unless it is special or the court order the case to be reserved for future argument or consideration."

There were no special questions and no order was made reserving any question for future consideration. The clerk did not enter judgment on the day the verdict was returned, but plaintiff argues that the statute made it mandatory for him to enter the judgment on that date and his failure to do so did not affect the rights of the parties.

The time within which an appeal may be taken commences to run from the date of the judgment. (See G. S. 1941 Supp. 60-3309.) It does not follow that because the statute required the clerk to enter judgment when the verdict was returned that the date of the verdict was the date of the judgment. As a matter of fact, no judgment was actually rendered that day. The judgment is the final determination of the rights of the parties in an action. (G. S. 1935, 60-3101.) The clerk could not enter judgment until the court had rendered it. The parties in this action did not regard the judgment as having been rendered on May 13. We know this because the journal entry recites that after the motion for a new trial had been overruled the plaintiff moved for a judgment in her favor on the verdict and that this motion was sustained on September 10, 1941. In view of this the plaintiff cannot be heard to say now that the judgment was rendered on May 13, 1941, just because the statute made it the clerk's duty to enter judgment on that day. Our attention is called to the fact that the notice of appeal specified that the appeal was from the judgment rendered on May 13, 1941. The judgment was not rendered on that date, however. It was not actually rendered until September 10, 1941, when the plaintiff asked for it. There was no doubt in the mind of any one as to the judgment from which the appeal was taken. It follows that the appeal was taken in time.

There remains the question of the effect of the appeal being taken from the judgment and not from the order overruling the motion for a new trial. The appeal from the judgment gave us jurisdiction to review the action of the trial court in overruling the demurrer of the defendant to the evidence of plaintiff. This action of the trial court is one of the grounds relied upon by defendant for reversing the judgment. (See G. S. 1941 Supp. 60-3314a; also, *Drenning v. City of Topeka*, 148 Kan. 366, 81 P. 2d 720.)

The defendant also argues that the court erred in giving the instruction on the doctrine of *res ipsa loquitur*. Plaintiff argues that error in the giving of an instruction was a trial error and cannot be reviewed unless there was a motion for a new trial. Without conceding the soundness of this argument the defendant has filed a motion in this court to amend its notice of appeal by reciting the true date of the judgment and specifying therein the order overruling the demurrer to plaintiff's evidence and the order overruling their motion for a new trial.

Plaintiff contends that this cannot be done, and cites *Salt City B. & L. & S. Association v. Peterson*, 145 Kan. 765, 67 P. 2d 564. In that case there had been no effective appeal at all and this court held that under such circumstances a notice of appeal could not be amended so as to permit an appeal to be filed out of time when the appeal that had been taken was a nullity.

Here we have seen there was a good appeal taken. Under such circumstances we have permitted the notice of appeal to be amended when the only effect of the amendment is to broaden the scope of the review. (See *Boss v. Brown*, 132 Kan. 86, 294 Pac. 878; *Sheridan v. Phillips Pipe Line Co.*, 134 Kan. 260, 5 P. 2d 817; *Vincent v. Werner*, 140 Kan. 599, 38 P. 2d 687.)

We have concluded that defendant should be permitted to file the amended notice of appeal under authority of G. S. 1935, 60-3310. Having reached that conclusion we shall proceed to consider the merits of the appeal.

Defendant first argues that the trial court erred in overruling its demurrer to the evidence of plaintiff. The evidence upon which plaintiff relies has already been set out here. Briefly it was that the bus stopped so suddenly that plaintiff was thrown out of her seat and injured. Defendant argues that the above evidence did not prove a set of circumstances so related to each other that the only reasonable conclusion to be drawn therefrom was that the defendant was guilty of negligence.

The argument is not good. The defendant owed plaintiff the duty to use the highest degree of care for her safety. She proved that she was thrown from her seat and injured by a sudden stop. There was but little more she could prove. She had a right to rely upon the defendant not operating its bus in a violent manner. She would not expect such a sudden stop.

In *Ewing v. Street Railroad Co.*, 91 Kan. 388, 137 Pac. 940, plaintiff was thrown to the ground by a sudden jerk of a street car as she was alighting. This court said:

"An unusually sudden or violent jerk or lurch a passenger has no reason to expect, and proof of an injury received by a passenger from the sudden or violent starting of a car as she was alighting is ground for an inference that the carrier was negligent."

In *Clarke v. Cardinal Stage Lines*, 139 Kan. 280, 31 P. 2d 1, about all the plaintiff was able to prove was that she was riding in a bus, the front axle broke, the bus left the road and she was thrown out and injured. There was no evidence as to what caused the axle to break. When the defendant argued that its demurrer to the evidence should have been sustained, this court said:

"It is next contended that the evidence was insufficient to take the case to the jury under the rule of *res ipsa loquitur*. Plaintiff's evidence clearly and without dispute established the fact and the 'character' of the accident (*Chaisson v. Williams*, supra), and the 'manner and circumstances' of her injury (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 651, and citations, 249 Pac. 599), and certainly the breakdown of a passenger bus on a good road in the daytime with no external cause known or surmised made a prima facie case for the application of *res ipsa* doctrine."

See, also, *Southern Pac. Co. v. Hanlon*, 9 F. 2d 294, also *Laible v. Wells*, 317 Mo. 141, 296 S. W. 428.

Defendant next argues that the court erred in giving instruction No. 9. That instruction was as follows:

"You are further instructed that the plaintiff in this action relies to some extent on what is known in law as the doctrine of *res ipsa loquitur*, which is a rule of evidence and means literally 'the thing speaks for itself.'

"You are further instructed that where the doctrine of *res ipsa loquitur*, as above defined, is applicable, a presumption of negligence arises from the fact that there is an accident. In other words, the mere fact that an accident occurred, when one ordinarily would not occur, is some evidence that it was due to negligence on the part of the defendant, and if the plaintiff is not in position to know what caused the accident, she has the right to rely upon the fact of the accident as proof that it was due to some negligence on the part of the defendant."

Defendant calls our attention to that portion of the above instruction where the court said:

"You are further instructed that where the doctrine of *res ipsa loquitur*, as above defined, is applicable, a presumption of negligence arises from the fact that there is an accident. . . . When such situation arises, the burden of going forward with the evidence is upon the defendant, and in order to show that it was not negligence, it may show . . ."

Defendant argues that it was error to instruct the jury that the proof that the accident occurred and that injury resulted created a presumption of negligence. The above is not a fair statement of the entire instruction. The instruction goes on to state that:

"In other words, the mere fact that an accident occurred, when one ordinarily would not occur, is some evidence that it was due to negligence on the part of the defendant."

Uncontradicted "some evidence" of the negligence of defendant would be sufficient to take the case to the jury.

The instruction next stated:

"And if the plaintiff is not in position to know what caused the accident, she has the right to rely upon the fact of the accident as proof that it was due to some negligence on the part of the defendant."

This statement, together with what preceded it, is merely another way of saying what this court said in *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599. There this court, in speaking of the doctrine of *res ipsa loquitur*, said:

. "Rather, in cases in which the phrase is applicable, proof of negligence is made, if at all, by circumstantial evidence; that is, the proof of the casualty and of the surrounding circumstances are such as to leave no reasonable conclusion to be drawn therefrom other than that the casualty happened because of the negligence of defendant." (p. 651.)

The trial court told the jury in this instruction that when the situation described arose the burden of going ahead with the evidence was upon the defendant, and in order to show that it was not negligent it might show it exercised due care in the use and maintenance of its bus. This is just another way of telling the jury that proof of an accident where one ordinarily would not occur, and under circumstances where the plaintiff was not in a position to know what caused the accident, was sufficient to require the submission of the case to the jury; but that the defendant could show what caused the driver of the bus to bring it to a sudden stop or any other evidence which would tend to prove that the bus company was not in

fact negligent. Furthermore, the instructions must all be considered as a whole. The jury was instructed in instruction No. 7 that negligence to be actionable must be the proximate cause of the injury, and in instruction No. 12 that a carrier was only responsible for injuries to its passengers which were caused by its negligence.

The views expressed herein are approved in *Woods v. Kansas City, K. V. & W. Rld Co.*, 134 Kan. 755, 8 P. 2d 404; also, *S. K. Rly. Co. v. Walsh*, 45 Kan. 653, 26 Pac. 45, *O'Keefe v. Street Railway Co.*, 93 Kan. 262, 144 Pac. 214, *Railway Co. v. Brandon*, 77 Kan. 612, 95 Pac. 573. We hold that there was no error in the instructions.

The judgment of the trial court is affirmed.

HOCH, J., not participating.