## WICHITA TRANSP. CORPORATION v. BRALY.

### No. 3099.

Circuit Court of Appeals, Tenth Circuit.

July 2, 1945.

George Siefkin, of Wichita, Kan. (Robert C. Foulston, Samuel E. Bartlett, and George B. Powers, all of Wichita, Kan., on the brief), for appellant.

Joseph Cohen, of Kansas City, Kan. (Payne H. Ratner, of Wichita, Kan., on the brief), for appellee.

Before, BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By this appeal the Wichita Transportation Corporation seeks to reverse a judgment of the District Court of Kansas, based upon interrogatories submitted to the jury and answered in favor of appellee, in a suit for damages by her for personal injuries sustained while a passenger on one of appellant's busses.

On November 28, 1942, at about three o'clock in the afternoon, one of appellant's busses in which appellee was a passenger, while traveling northward on Topeka Avenue, a thoroughfare in Wichita, Kansas, stopped at the curb to load and unload passengers and to await the change of the traffic signal at the intersection of First Street. With the change of the traffic light, the bus started north across the intersection and pedestrians started across First Street to the right of the bus. When a Ford Coach from the opposite side of the intersection made a left turn into First Street the bus driver suddenly stopped his bus to avoid a collision with the car, and appellee alleges that by causing the bus to come to a sudden stop, the driver failed to exercise proper care, as a result of which she "was thrown with great force and violence against the seats and floor of said bus, causing her to suffer and sustain" the injuries complained of, and for which damages were assessed by the jury verdict.

To support her allegations, appellee testified that upon boarding the crowded bus she was unable to find a seat and was standing in the aisle near the rear door holding to a handrail when the bus started moving into the intersection. That after the bus had traveled a short distance, it stopped "real sudden" and she was thrown to the floor and the woman standing behind was thrown forward upon her back. She did not know what caused the bus to stop —that it "wasn't going very fast" but it "was a real sudden quick stop, enough to throw that woman down on me".

In explanation of the sudden stop, the driver of the bus testified that before the traffic signal changed, and he proceeded into the intersection, he observed a southbound Ford Coach on the opposite side of the intersection waiting for the traffic signal and he also observed pedestrians at the right waiting for the light to change before crossing the intersecting street. He moved into the intersection in low gear at a speed of approximately three miles per hour. When he had traveled less than the length of the bus he was forced to bring it to a stop in order to avoid a collision with the Ford Coach which, while making a left turn into First Street without signaling, had stopped directly in front of the moving bus in order to avoid hitting a pedestrian. He further testified that he stopped the bus within five feet by the application of foot air brakes, at which point he was approximately two feet from the Ford. That when the pedestrian's movement permitted, the Ford continued east into First Street and he moved his bus across the intersection before he knew that anything had happened to any of his passengers. He called the stop an "emergency one" but stated that he "didn't jerk so hard"; that it was not difficult to bring a bus to a smooth stop when traveling three miles per hour and "that he made as smooth a stop as possible to keep from hitting that car".

One passenger, testifying for appellant, stated that the stop "was a jolting sort" but it did not jolt her because she was sitting down; that she observed the Ford Coach making a left turn in front of the bus but did not see it stop (as the bus driver testified), and that when the bus came to a stop the two vehicles were "real close".

Another passenger testifying for appellant stated that "just about the time the bus stopped" he saw the Ford in front of it; that the bus driver "stopped when he saw he was going to hit the other car, he just stopped his car right there" about two and one-half feet from the Ford which was traveling east.

After instructions, about which appellant did not complain, and in answer to submitted interrogatories, the jury found that the driver was compelled to bring the bus to a "sharp, unusual and violent stop" in order to avoid a collision with the Ford Coach as it made a left turn across the intersection, but that the driver was negli-

gent "in failing to keep a reasonable lookout and anticipating the act of the driver of the automobile", and that such negligence was the proximate cause of the injuries.

On appeal appellant contends that since it is not an insurer of the safety of its passengers, it is not liable for injuries caused by a sudden stopping of the bus, due to an emergency created by causes for which the carrier is not responsible. That negligence, never presumed, cannot be established by speculation, guess or suspicion, and there is no evidence in this case tending to show, or upon which the jury is warranted in finding that the bus driver failed to keep a proper lookout or anticipate the acts of the driver of the automobile.

We start with the rudimentary principle that while a common carrier is not an insurer of the safety of its passengers, it is held to a high degree of care commensurate with the particular hazards involved. Picou v. Kansas City Public Service Co., 156 Kan. 452, 134 P.2d 686; McQuin v. Santa Fe Trail Transportation Co., 155 Kan. 111, 122 P.2d 787; Miller v. Kansas City Public Service Co., 136 Kan. 288, 15 P.2d 453; Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420. Making application of this standard of care, it is said that a passenger assumes the natural consequences of normal jerks as a part of the ride in a public conveyance, but a "sharp, unusual and violent" stop is evidence from which a legitimate inference of negligence may be inferred. McQuin v. Santa Fe Trail Transportation Co., supra; Dempsey v. Market Street Ry. Co., 23 Cal. 2d 110, 142 P.2d 929; Waite v. Pacific Gas & Electric Co., 56 Cal.App.2d 191, 132 P.2d 311; McIntosh v. Los Angeles Ry. Corporation, 7 Cal.2d 90, 59 P.2d 959. See also Mark Shain's Res Ipsa Loquitur, Presumptions and Burden of Proof, p. 457.

In our case, the jury was fully justified from the facts and circumstances in finding that the stop was "sharp, unusual and violent", and it is a generally understood and accepted rule in cases of this kind, that the fact of the unusual and violent stop is factually sufficient within itself to establish a prima facie case in favor of the passenger who is injured by reason thereof, and to cast upon the appellant the duty of showing that such stop was caused by circumstances beyond the control of the driver while exercising the highest degree of care and caution. McQuin v. Santa Fe Trail Transportation Co., supra; McIntosh v. Los Angeles Ry. Corp., supra; Jackson v. Capital Transit Co., D.C.Mun.App., 38 A.2d 108.

Thus, the appellee established a prima facie case by showing that she was a passenger on the bus and that she was injured by a sudden and violent stoppage of it. The appellant sought to be relieved of liability for the injury by showing that the bus moved into the intersection traveling approximately three miles per hour in low gear, and that when the driver of the automobile, while moving directly in front of the bus suddenly stopped to avoid hitting a pedestrian, the bus driver exercised proper care in bringing his bus to as smooth a stop as possible to keep from hitting the car.

The bus driver, however, does not acquit himself of the presumption of negligence arising out of the unusual and sudden stop by showing that he exercised proper care in bringing the bus to as smooth a stop as possible to keep from hitting the car. The crucial question here is not what he did after he was faced with the emergency— it is how he happened to become involved in it. Oppenheim v. Toye Bros. Yellow Cab Co., supra. Cf. Tochek v. Monongahela Transport Co., 109 W.Va. 20, 152 S.E. 776. Having been faced with the necessity of stopping the bus in a manner to cause injuries to the passengers, it became the duty of the appellant to show to the satisfaction of the jury that it did not negligently create or contribute to the creation of the emergency which necessitated the "sharp, unusual and violent" stop.

Whether the "emergency" which required the sudden stop was created by the failure of the bus driver to keep a reasonable lookout and anticipate the acts of the driver of the automobile is not in our view in these circumstances a question of law but one of fact. The question was clearly and simply submitted to the jury upon this theory and by its verdict the jury said in substance that if the driver of the bus had kept a reasonable lookout he would have anticipated the act of the driver of the automobile and thereby avoided the necessity of the sudden stop which caused the injuries to appellee.

It follows that the judgment should be, and is affirmed.