**BERNARD**

v.

**U. S. AIRCOACH et al.**

No. 14231.

United States District Court
S. D. California, Central Division.

Nov. 23, 1953.

Harry J. Miller, Los Angeles, Cal., for plaintiff.

Bauder, Gilbert, Thompson & Kelly, by Reginald I. Bauder, and Roger E. Kelly, Los Angeles, Cal., for defendant U. S. Aircoach.

TOLIN, District Judge.

On June 11, 1952, plaintiff Jack Bernard brought suit against defendant U.

S. Aircoach and others claiming jurisdiction of this Court by reason of diversity of citizenship. He alleged that on June 24, 1951 said defendant operated as an air carrier for the transportation of passengers for hire and that plaintiff, while a paying passenger in an airplane of defendant traveling between New York City and Chicago, suffered personal injury due to negligent maintenance and operation of the airplane in which he was a passenger. On July 2, 1952, said defendant filed its answer wherein it denied any active negligence and denied that plaintiff had sustained the injuries which he claimed. It did not therein present any additional matter of defense. The answer was verified by the president of the corporation and signed by its attorney of record herein. Trial was subsequently set for June 2, 1953 with a pre-trial conference to be held April 16, 1953. On the April date an informal course of pre-trial discussion was had wherein each litigant was asked to, and purportedly did, state their contentions in the litigation. In the course of the pre-trial, the Court requested memoranda upon certain legal issues which had been discussed in said conference. Thereafter on May 20, 1953, defendant U. S. Aircoach filed its points and authorities and therein for the first time mentioned a newly claimed defense. There has been no request for permission to amend the answer and the case was rather well-positioned for trial on the pleaded issues at the conclusion of said pre-trial conference. The new contention is stated in said memorandum thus:

"It is a condition precedent to filing suit for an airplane accident where the flight moved under a filed tariff providing for the filing of claims, that such claim was actually filed, and the plaintiff must plead in compliance with the tariff provisions."

When it received said memorandum, the Court called for a further pre-trial conference to deal with the problem of the newly stated legal issue and after hearing argument thereon, stated that it would rule upon the availability of the newly claimed defense prior to the actual trial of the case. Plaintiff contends that defendant U. S. Aircoach has waived the newly claimed defense by not seasonably presenting it in its answer or an amendment thereto and claims that to permit a new defense to be now pleaded would create prejudice in that the preparation of the case had been virtually completed and the litigation arranged for trial without regard to what said defendant now argues is a complete defense regardless of what the facts may be upon the only pleaded issues.

Plaintiff further claims that he is in a position to prove that he had complied with the alleged notice requirement because of certain acts which he can prove were done, although the object in doing them was to procure settlement rather than to meet any procedural requirement of law. Defendant U. S. Aircoach replies to this assertion that it is forbidden by statute to waive any defense which it has to the action herein and that acts which might ordinarily be construed as a waiver of a particular defense by a litigant will not operate against it because Title 49, U.S.Code Annotated, § 484, provides:

"Rates for carriage of persons and property.
＊　　＊　　＊　　＊　　＊
"(b) No air carrier ＊ ＊ ＊ shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

The gist of the argument made upon said said Statute is that to fail to assert a valid defense to a claim made by a passenger would be to give "undue or unreasonable preference or advantage

to" a "particular person". The Statute is a subsection of a chapter of said Code entitled "Air Carrier Regulation" and said Statute includes a requirement of like treatment of passengers with respect to tariffs and forbids discriminations either in favor of or against any particular class of persons. Defendant argues that to allow any passenger to collect damages by reason of tortious action or inaction of the air carrier, if that passenger has not complied with all tariff regulations, would be to allow judicial approval to the granting of a wrongful preference.

It is noted that the particular defense now sought to be applied in this case is informally presented after the case is at issue and after completion of what had been intended as the only pre-trial conference therein. It thereby appears that a fully rounded recognition of the said defendant's contention that it cannot waive a defense, would foreclose any court from even entering a default judgment against an air carrier which might default in an action of this kind. Defendant U. S. Aircoach has not referred the Court to any authority which calls for so legalistic interpretation of the rules against discrimination in tariffs. The seeking of redress for personal injuries resulting from negligent operation of an air carrier's vehicle is not a tariff matter at all. The Statute relative to equal treatment of passengers, Title 49 U.S.C.A. § 484, has no application here. The question whether waiver of a defense has occurred must be determined by the law relating to waiver of defenses generally and not by twisting Section 484 of Title 49 U.S.C.A., into something not intended by its authors or stated in its language. The question of whether there has been a waiver of a specific defense is, however, a different question than whether the law refuses to allow a litigant to waive a defense. The litigants before the Court have come to Court with a declared intention by their respective pleadings to try an issue as to whether plaintiff was injured because defendant U. S. Aircoach

was guilty of negligence in the operation of an airplane. Said defendant, in effect, now says that this is not the main issue but that plaintiff is barred by non-compliance with a supposed tariff requirement. It now stands out boldly that the contention as to the effect of filing a tariff containing a rule of the sort contended, urges a condition precedent to litigation upon an injured passenger. If such a condition precedent actually exists, non-compliance with it would render inappropriate the devotion of the considerable amount of time usually required to try the facts and law of a negligence action. If such a condition precedent might exist, even moderate employment of ordinary discovery practices would ordinarily posture the case for disposition upon a motion for summary judgment or for a severance of issues and a short trial of the factual and legal tariff compliance issues. The Court holds that when a defendant files an answer verified by one of its corporate officers (in this case its President) and signed by its counsel, thereafter engages in extensive discovery procedure covering a period of many months, and goes through pre-trial without urging a highly technical defense and first presents such a claimed defense by a memorandum of law filed with the court after pre-trial, such a tardy litigant has waived its right to urge such a defense. It must be recognized that if such a defense existed, the president of the corporation would have known of it since in its very nature it pertains to things which would have been done in the business administration of the corporation rather than in the operations section where the alleged tort supposedly was done. If defendant U. S. Aircoach has such a defense, it knew of it at least as early as the verification of the answer on July 30, 1952, almost one year before the supposed defense was suggested, but not pleaded, in an informal memorandum which does not amount to or purport to be an amendment of the answer. It is one of the essentials of the principle of waiver of a defense that if one

knows of the defense, it must be seasonably pleaded. Phillips v. Baker, 9 Cir., 121 F.2d 752, certiorari denied 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551; Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778; Cohen v. Beneficial Industrial Loan Corp., D.C., 93 F. Supp. 418; Rules 8, 12, F.R.C.P., 28 U.S.C.A.; Cf. Sec. 434, California Code Civil Procedure. The supposed defense has clearly been waived by defendant U. S. Aircoach. However, if this were not so, failure by a passenger to file a claim for damages with the carrier within 90 days of sustaining the injury does not constitute a defense even if pleaded in the original answer or some *seasonably* made amendment thereto.

▬▬▬ Defendant U. S. Aircoach claims the right, when filing its tariffs with the Civil Aeronautics Board, to append and file a condition that claims for damages be made within 90 days of injury, whereas a complete reading of Title 49 U.S.C.A. (the Statute regulating air carriers) fails to disclose any statutory authority for placing a requirement of that character in a tariff such as is required by that Statute to be filed. Granting that the law requires a tariff to be filed, posted, and published with the Civil Aeronautics Board (as this Statute clearly does require), a court will not read into such a statute any radical provision binding passengers to some requirement on the passenger's part which the law does not require. Grafting something other than a tariff matter into a filed tariff, if not positively improper, at least creates no new rights. 83 C.J.S., 943 defines tariff:

"As ordinarily understood, a system of rates and charges * * *."

Webster's New International Dictionary of the English Language (published 1925) defines tariff as:

"Any schedule or system of rates, charges, etc.; as a tariff of fees, or of railroad fares."

On page 1702 in Black's Law Dictionary (3rd Edition), tariff is defined as:

"A cartel of commerce, a book of rates, a table or catalogue, drawn usually in alphabetical order, containing the names of several kinds of merchandise, with the duties or customs to be paid for the same, as settled by authority, or agreed on between the several princes and states that hold commerce together. * * * *."

The only definition attempted in Title 49, U.S.C.A., which sets forth the Statute in detail, is that every air carrier shall file " * * * tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. * * *" 49 U.S.C.A. § 483. The tariff thus referred to is clearly a tariff for service to be rendered by the airplane and not one for compensation for the torts committed by it. Compensation for torts is, with rare statutory exemptions (such as those enumerated under Workman's Compensation Acts), measured by individualized application of general rules of damages in tort liability. The Act here involved does not, nor does any other statute, permit an air carrier of paying passengers to limit its tort liability. It is true that in international air transportation there is a limitation of liability under what is generally known as the Warsaw Convention Treaty. 49 Stats. at Large 3000 treated in Limitation of Air Carriers' Liability, 13 A.L.R.2d 337. This Treaty is not involved here. It is a basic principle of law that one cannot in advance of doing an act of negligence, limit his or its liability for the results which flow from the tort of negligence, New York Central Ry. v. Lockwood, 17 Wall. 357, 84 U.S. 357, 21 L.Ed. 627; Bank of Kentucky v. Adams Express Co., 93 U.S. 174, 23

L.Ed. 872; Kansas City Southern Ry. Co. v. U. S., 282 U.S. 760, 51 S.Ct. 304, 75 L.Ed. 684; Curtiss-Wright Flying Serv. v. Glose, 3 Cir., 66 F.2d 710, certiorari denied 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599, nor prescribe conditions for recovery of damages which flow from acts of negligence, even though there be a contract of carriage by a common carrier.

Defendant U. S. Aircoach relies upon the inapplicable case of Lichten v. Eastern Airlines, D.C., 87 F.Supp. 691, affirmed in 189 F.2d 939, 25 A.L.R.2d 1337. That case is inapplicable to the specific facts here. Appellant there brought suit to recover the value of jewelry which was contained in two pieces of baggage which she took with her as baggage on an air trip where the primary duty assumed was to carry the passenger. One of the bags was mistakenly carried on past her point of debarkation and when it had been retrieved and restored to the traveler, it was found that over $3,000 of jewelry had been abstracted from the bag. In compliance with the Civil Aeronautics Act, the air carrier had filed with the Board a tariff which provided that jewelry would be carried only at the risk of the passenger. This was coupled with like disclaimer relating to fragile things, etc. See 87 F.Supp. 691, 694, for the facts of the case as declared in the District Court's opinion. The tariff made it clear that baggage should consist only of "wearing apparel, non-liquid toilet articles and similar effects *for actual use which are necessary and appropriate for the comfort and convenience of the passenger for the purposes of the journey * * *.*" (Emphasis supplied.) Other tariffs on file with the Board disclosed that the passenger could have shipped the jewelry air freight and by the declaration of actual value and the payment of a surcharge for value in excess of $100, procured a different class of handling of the jewelry than was given baggage which was allowed to be carried only for personal use and convenience in a situation wherein the passenger

was the primary subject of carriage and the baggage was incidental and wherein jewelry (the lost property) was specifically declared ineligible for transportation as baggage. The case thereby arose from surreptitious use of the baggage transportation privilege accorded a passenger and has nothing to do with safety standards required for the handling of the plane itself in protection of paying passengers who are always entitled to the highest degree of care it is possible to attain. Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141; Voltmann v. United Fruit Co., 2 Cir., 147 F.2d 514; Wichita Transportation Co. v. Braly, 10 Cir., 150 F.2d 315. This obligation to maintain a high standard of care has nothing to do with the tariff but it has long been recognized that the value of property transported either as baggage or freight is a common ingredient of calculation of tariff and liability for damage. Questions limited to bailments enter into the baggage situation but are absent when considering the passenger. Some types of transportation, even within a general classification of air, rail, steamship, etc., are more appropriate for particular chattels than others, and it is left to shippers to determine which they will select for transportation of their property. A sequel to this rule is that if one elects to ship property of greater value than within some declared base carriage rate, the procurement of assurance of indemnification for damage or loss depends upon payment of an extra consideration beyond the base rate which applies generally to things of lesser value. The right to fix different rates for different classes of baggage or to have a choice of degree of care to be given shipped property was discussed by the Supreme Court in 1953 in New York, N. H. & H. R. Co. v. Nothnagle, 346 U.S. 128, at pages 135–136, 73 S.Ct. 986, at page 990:

"* * * only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a car-

rier lawfully limit recovery to an amount less than the actual loss sustained. Boston & Main R. Co. v. Piper, 1918, 246 U.S. 439, 444–445, 38 S.Ct. 354, 355, 62 L.Ed. 820; Union Pacific R. Co. v. Burke, 1921, 255 U.S. 317, 321–323, 41 S.Ct. 283, 284–285, 65 L.Ed. 656; cf. The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 1935, 294 U.S. 494, 497–498, 55 S.Ct. 483, 484–485, 79 L.Ed. 1016. Binding respondent by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice; such an arrangement would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts. Ibid.; cf. Watson Bros. Transp. Co. v. Feinberg Co., 8 Cir., 1951, 193 F.2d 283, 286. 'The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence "seeks to put off the *essential duties* of his employment." It is recognized that the carrier and the individual customer are not on an equal footing. "The latter * * * cannot afford to higgle or stand out and seek redress in the courts." ' Sante Fe P. & P. R. Co. v. Grant Bros. Construction Co., 1913, 228 U.S. 177, 184–185, 33 S.Ct. 474, 477, 57 L.Ed. 787. In sum, respondent cannot be held bound by petitioner's limitation, * * * ." (Emphasis in quoted material.)

The Lichten case concerned degree of property loss liability only, and that concerning a bailment situation. The case contained no question of whether a carrier required to file a tariff is entitled to engraft thereon a gratuitous, entirely unilateral requirement of a claimant that claim be filed within a less time than applicable statutes of limitation allow. Public policy forbids any such

avoidance of liability for negligence in the transportation of paying passengers by an air carrier. No statute exists granting air carriers of passengers the right defendant claims in this case. It thus appears that Lichten v. Eastern Airlines, supra, upon which defendant U. S. Airlines relies, is inapplicable to the questions in the instant case.

■ The Court's attention has not been directed to any decision of an appellate court respecting the validity of a gratuitous insertion in an air carrier tariff of a time limitation for the filing of claims. The Court's research has not brought any such case to light. However, several United States District Courts, relying on well-established principles of law for which ample appellate authority exists, have treated the subject and in the absence of appellate authority in this Circuit (Ninth) to the contrary, will be deemed declaratory of the law. Very recent in time to the case before this Court, is Shortley v. Northwestern Airlines, 104 F.Supp. 152, which speaks on our specific legal question in this language, at page 155:

"The first question which must be answered is, does the inclusion of this provision in the tariff, filed by the defendant, operate as a matter of law to preclude the plaintiff from maintaining an action within the period fixed by law as a statute of limitations, but in the absence of the ninety-day notice and beyond the one-year period stated in the tariff provision? The answer is that it does not. Unquestionably, with respect to rates or matters affecting rates, the character of services to be performed, practices relating to the services to be rendered and matters required by the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., or by regulations promulgated by the Civil Aeronautics Board pursuant to said Act, the tariff regulations do as a matter of law control the carrier and the passenger or shipper, * * * . Nowhere, however, in the Act of Congress, or

in the regulations promulgated by the Board, is there any authorization or requirement for the inclusion in a tariff of any provision respecting limitation upon notice of claims or upon the time for commencement of actions thereon. Unquestionably, when a lower rate is charged for the transportation of baggage or property, based upon the valuation thereof, than would be charged for its transportation if of greater value, appropriate tariff provisions do affect the rates and charges and are constructive notice to a passenger or shipper. Where a tariff provision is gratuitously inserted with respect to a matter other than that contemplated or required by the Act of Congress, or the regulations made pursuant thereto, a passenger or shipper is not chargeable with notice as a matter of law with respect thereto. A tariff is ordinarily understood to be a system of rates and charges. Pacific S. S. Co. v. Cackette, 9 Cir., 8 F.2d 259. * * "

Also pertinent is Thomas v. American Air Lines, Inc., D.C., 104 F.Supp. 650, where the following appears, at pages 650–651:

"The limitation period for giving notice and bringing suit in the tariffs of a common carrier are binding upon the passengers only if there is statutory authority for filing such tariff, that is, the statute controlling requires its filing. Southern Pacific Co. v. United States, 272 U.S. 445, 47 S.Ct. 123, 71 L.Ed. 343. Even the carrier itself is not bound by such a tariff not so authorized. Thompson v. Chicago, B. & Q. R. R. Co., 157 I.C.C. 775.

"The Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., sets forth the provisions relating to the filing of tariffs and does not require or authorize by implication the filing of tariffs limiting in any way the liability of the carrier for its own negligence for personal injury to the passenger.

"Pacific Steamship Company v. Cackette, 9 Cir., 8 F.2d 259, is on all fours with the case at bar, and sustains plaintiff's contention. In this case the U. S. Supreme Court denied certiorari, 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426. * * * "

See also, Toman v. Mid-Continent Airlines, D.C., 107 F.Supp. 345, which states, at pp. 345–346, as follows:

"As in the case of Danneberg, Administrator of the Estate of Jane C. Lundahl, Deceased v. Mid-Continent Airlines, Inc., Order No. 7210, the defendant has filed a motion to dismiss the action upon the ground that under specified tariff regulations the plaintiff is barred from prosecuting his action. On the other hand, the plaintiff through his counsel has filed a motion to strike the defensive matter which forms the basis for the defendant's motion to dismiss.

"The question involved is whether a tariff regulation promulgated by the defendant is effective to bar the action unless notice of the claim be given 'within 90 days after the alleged occurrence of the events giving rise to the claim.' It is practically admitted that the plaintiff did not definitely notify the defendant of his purpose to assert claim within the 90 day period as prescribed by the tariffs filed by the defendant.

"1. Section 483, Title 49 U.S. C.A. relating to the general subject of Transportation specifically provides that:

" '(a) Every air carrier * * * shall file with the Board * * * tariffs showing all rates, fares, and charges for air transportation between points served by it * * * and showing to the extent *required by regulations of the Board,* all classifications, rules, *regulations,* practices, and services in connection with such air transportation.' (Emphasis in quoted material.)

And section 484 of said Title 49 U.S.C.A. provides, among other things, that:

" '(a) It shall be the duty of every air carrier * * * to establish, observe, and enforce just and reasonable individual * * * rates, fares, and charges, and just and reasonable * * * rules, regulations, and practices relating to such air transportation'.

While it appears that the defendant filed tariffs as required by statute wherein it attempted to limit its liability in case of failure to give notice within 90 days, such action on its part did not appear to follow a regulatory requirement of the Civil Aeronautics Board as required by statute. Subsequently the Board, in a number of cases of other air carriers, abrogated or nullified similar provisions regulating or limiting liability as unjust and unreasonable. And the Board has extended the time in which claims should be made.

"2. In addition to the above, the question arises whether even the Board would have the right to approve regulations such as that submitted by the defendant unless specially authorized to do so by statute.

\* \* \* \* \*

"3. While in the case of Wilhelmy v. Northwest Airlines, D.C., 86 F.Supp. 565, the district court for the Western District of Washington held that the claim was barred by the provisions of the regulation yet this decision has not been followed, but a contrary ruling was made in the case of Shortley v. Northwestern Airlines, D.C., 104 F.Supp. 152. And a similar ruling was made by Judge Trimble of the Eastern District of Arkansas in Thomas v. American Airlines, Inc., 104 F.Supp. 650. Judge Trimble succinctly stated the rule as follows:

" 'The limitation period for giving notice and bringing suit in the tariffs of a common carrier are binding upon the passengers only if there is statutory authority for filing such tariff, that is, the statute controlling requires its filing.' \* \* \* "

It is clear that there is no statutory mandate or permission for the particular "snare" or "trap" contended by defendant U. S. Aircoach.

The gratuitous, unilateral act of said defendant in filing what was not required, was entirely ineffectual and this Court holds, as to this point, to the same effect as the United States District Court for the District of Columbia in Shortley v. Northwestern Airlines, supra.

Whereas there is a serious contention of fact and of law made in the immediately foregoing regard by defendant U. S. Aircoach, and plaintiff (although urging the unavailability as well as illegality of the contended defense) claims an ability to meet the asserted requirements of said defendant by showing that written demand was made within 90 days, a court should resolve all disputes of fact which can be quickly placed before a trier of fact if there is any possibility that an appellate court might rule that the particular issue should have been tried.

Although satisfied that the law is as stated herein, this Court can, within a very brief time, determine the disputed facts while trying the main case.

Counsel are directed to suggest appropriate interrogatories for submission to the jury so that at the trial there will be an adjudication of all disputed facts which might conceivably enter into ultimate disposition of the case.

Proposed interrogatories in the area of inquiry stated shall be submitted by each party within twenty days. Objections or comments thereon may be submitted within ten days thereafter. The Court will settle the interrogatories to be propounded to the jury in this connection prior to the date of trial.