Filed 10/29/25; Modified and Certified for Pub. 11/26/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JANICE AGUSTIN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GOLDEN EMPIRE TRANSIT DISTRICT et al.,<br><br>    Defendants and Respondents. | F088135<br><br>(Super. Ct. No. BCV-21-102362)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Downtown L.A. Law Group, Igor Fradkin, Daniel Azizi; Joseph S. Socher, Esq. and Joseph S. Socher for Plaintiff and Appellant.

Zimmer & Melton and Justin L. Thomas for Defendants and Respondents.

-ooOoo-

Plaintiff and appellant Janice Agustin was injured when she fell while riding as a passenger on a public bus operated by Golden Empire Transit District (GETD).  Agustin sued defendants and respondents, GETD and the bus driver, Errol Cunningham.  The

operative first amended complaint (FAC) alleged Cunningham negligently operated the bus resulting in injury to Agustin and GETD was vicariously liable for Cunningham's negligence.  The trial court found the bus's video recording showed Agustin lost her balance and fell when the bus was moving in an ordinary manner.  Defendants' motion for summary judgment was therefore granted and judgment entered in defendants' favor.

Agustin argues the trial court erred in granting summary judgment because there were triable issues of fact as to the central issue of whether Cunningham negligently caused her injuries.  Agustin contends:  (1) the trial court erroneously invoked the primary assumption of risk doctrine; (2) summary judgment could not be granted based solely on the issue of Agustin's alleged negligence; (3) the video evidence alone cannot support the conclusion defendants exhibited the utmost care; (4) Agustin's expert declaration raised triable issues of fact as to whether Cunningham breached his duty of care by failing to warn Agustin to sit down or hold on; and (5) application of the res ipsa loquitur doctrine was a triable issue of fact for the jury.

After independently reviewing the record, we conclude there was no evidence defendants acted negligently, and the bus's video shows the sole proximate cause of Agustin's injury was her own negligence.  Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Fall*[1]

GETD is a public entity and operates the primary public transit system in the Bakersfield urbanized area.  Cunningham began driving for GETD in 2005 and was driving bus No. 1069 on route 81 on the afternoon of October 21, 2020.  At approximately 2:09 p.m. that afternoon, Agustin boarded bus No. 1069 and took an empty seat.  Agustin had ridden GETD buses weekly for 10 years as her sole source of

---

[1]      " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' "  (*Wilson v. 21st Century Ins.* (2007) 42 Cal.4th 713, 716–717.)

2.

transportation at the time and had previously taken the route 81 bus. At about 2:28 p.m., Agustin stood up on the bus to be ready to get off at her stop. She held a railing with her left hand as she stood up and walked toward the bus's rear door holding a plastic bag with her left hand and a phone to her ear with her right hand. Agustin grabbed another railing as she moved toward the door. She let go of the railing and stumbled slightly before standing by the rear door without holding on. In accordance with the bus's route, Cunningham pulled the bus into a circle at the valley plaza bus stop and then turned the bus going north on Wible Road toward the next stop just outside the circle. As the bus was turning onto Wible Road, Agustin continued holding a plastic bag in her left hand and a phone to her ear with her right hand. She began to lean against the bus's partition, lost her balance, and fell into the aisle hitting the adjoining seats. Augustin let out a scream. The fall knocked the wind out of her and immediately caused extreme pain.

Cunningham did not give Agustin any type of warning that she needed to hold on before she fell. Passengers were allowed to stand on the bus and Cunningham had not been instructed to tell standing passengers to hold on. He saw Agustin fall in the bus's mirror and heard her yell. In his deposition, Cunningham testified Agustin was at the bus's rear door and was not hanging on when she fell. After stopping the bus, Cunningham checked on Agustin at the back of the bus and called 911. The other two passengers on the bus were seated and uninjured.

In her deposition, Agustin testified she stood up as the bus was going through the circle. She recalled Cunningham was going slow through the circle, and she fell onto the bus's steps as he accelerated to pull into traffic.[2] Agustin said, "he had to have jolted to go back out into traffic to park, to make his stop." When asked what she thought led to her fall, Agustin responded that Cunningham took off too fast and did not yield to traffic.

_____

[2] Agustin testified in her deposition she was holding a bus railing when she fell. She conceded she was not holding anything when the bus began to move in her response to defendants' separate statement.

3.

She also believed he was distracted because he was conversing with another passenger throughout her ride. Prior to October 21, 2020, Agustin had gotten up from her seat on the bus before her stop but had never fallen.

GETD's buses are equipped with video equipment surveillance consisting of multiple cameras that record various angles of the bus's interior and exterior. The cameras on bus No. 1069 recorded Agustin's ride including her fall.

### B. The Complaint

In October 2021, Agustin filed a form complaint indicating causes of action for motor vehicle negligence and general negligence. The operative FAC was filed in March 2022 against GETD and Cunningham.[3] The FAC alleged Cunningham "operated his vehicle without caution and in such a reckless and unsafe manner that he was speeding, driving recklessly and, without warning, abruptly stopped said vehicle causing severe injury and pain to" Agustin. The FAC further alleged defendants "negligently, wantonly, carelessly, and/or recklessly entrusted, owned, operated a motor vehicle in an unreasonable and unsafe manner thereby causing [Agustin] to sustain the injuries." The FAC asserted the claim was being brought pursuant to Government Code[4] section 815.2[5] and Vehicle Code section 17001 stating: "Pursuant to Vehicle Code section 17001, a public entity is liable for death or injury to person or property proximately caused by the negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his/her employment."

---

[3]     Cunningham was identified as "John Doe" in the FAC. (See Code Civ. Proc., § 474.) The other named defendants in the FAC—City of Bakersfield, County of Kern, and California Department of Transportation—are not parties to this appeal.

[4]     Undesignated statutory references are to the Government Code.

[5]     Section 815.2, subdivision (a) provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

Defendants were alleged to be "statutorily liable for the negligent acts of the Defendants' employee while he/she was operating the subject vehicle." The FAC stated GETD was served with a claim for damages pursuant to section 911.2,[6] and the claim was rejected on August 9, 2021.

Defendants answered the FAC with a general denial and several affirmative defenses including assumption of risk.

### C. The Motion for Summary Judgment

On November 29, 2023, defendants moved for summary judgment. Defendants sought summary judgment on the grounds that Agustin's motor vehicle cause of action was barred as a matter of law because: (1) there was no evidence of defendants' negligence; and (2) Agustin assumed the risks of the ordinary movements of the bus from which her injury resulted. In support of their motion, defendants submitted, among other evidence, a declaration from Cunningham and the bus's video recording of Agustin's ride showing the events leading up to the fall and the fall itself. Defendants claimed the bus's video was irrefutable evidence defendants were not negligent because the video shows Agustin was not holding on to anything in the bus to stabilize herself as the bus made an "ordinary movement" turning onto the street. Defendants also claimed the bus did not jerk or make any unusual movement and Agustin as a passenger assumed the known risks of ordinary movements of the bus. Defendants argued they did not owe a duty of care to Agustin as to the bus's ordinary movement. The motion urged the trial court to rely on the video evidence to determine there is no triable issue of fact.

---

[6]     Section 911.2 provides that a plaintiff must file a timely claim for money or damages with the public entity as a condition precedent to filing a lawsuit against the public entity. The failure to timely file a claim bars the plaintiff from filing a lawsuit against that entity. (§ 945.4; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)

5.

*D.* *Opposition to the Motion for Summary Judgment*

On February 1, 2024, Agustin filed her opposition to defendants' motion for summary judgment. She argued there remained disputed facts because Cunningham's deposition testimony conflicted with the video evidence and his declaration. Agustin further argued the res ipsa loquitur doctrine applied and defendants had failed to overcome the heightened duty of care applicable to common carriers. She asserted summary judgment was not proper even if the factual issues raised by defendants indicate comparative negligence on her part. Agustin separately filed objections to the evidence submitted by defendants in support of their motion.[7] In her response to defendants' separate statement, Agustin reiterated her argument that Cunningham's declaration conflicts with his deposition testimony and the video evidence.

In support of her opposition, Agustin submitted a declaration from her bus transportation safety expert, Carl Berkowitz, Ph.D. Dr. Berkowitz explained in his declaration that "[w]hen a bus negotiates a turn, a standing passenger on that bus may experience a sensation of being pulled to the side as the bus rapidly changes direction." He stated this occurs due to "the inertia of the human body, which causes it to continue moving in the original direction even as the bus makes the turns." Dr. Berkowitz continued: "This can cause a feeling of imbalance and can be disorienting for some passengers especially those who are prone to motion sickness. In addition to the sensation of being pulled to the side, the body also experiences changes in acceleration as the bus takes the turns. The sudden change in speed and in direction creates forces on the body, leading to feelings of dizziness. This is because the body's vestibular system, which is responsible for maintaining balance and spatial orientation, is thrown off by the rapid changes in motion." Dr Berkowitz opined that, due to this experience, "the standard of care [for bus drivers] is not to allow passengers to stand while the bus is in

---

[7] Several of Agustin's objections appeared to be for a different case based on names and facts obviously unrelated to the instant case.

6.

motion and seats are available for that passenger. It is not recommended to stand while a bus is taking turns, as the changes in acceleration and direction can increase the passenger's risk of falling or losing balance. Bus drivers can minimize the impact of turns by taking them at a slower speed and by providing adequate warnings to passengers in advance. Before the bus begins to move from a bus stop, advise passengers to be seated if seats are available; and if a seat is not available to hold onto a pole, bar, partition, etc." Dr. Berkowitz stated bus drivers "should check their mirrors frequently" to observe passengers. He opined Cunningham should have given "his passenger, Ms. Agustin, who was standing, notice to be seated before preparing for movement from the stopped position." Dr. Berkowitz further opined defendants failed to comply with the established standard of care by not providing a safe environment for their passengers.

### E. Reply to the Opposition

Defendants reiterated they owed no duty to Agustin as to the ordinary movement of the bus and claimed the res ipsa loquitur doctrine does not apply. Defendants also argued Agustin had failed to plead a cause of action for failure to warn or train. Defendants asserted Dr. Berkowitz's opinion on the standard of care as to a standing passenger was irrelevant and urged the court to disregard opinions and arguments inconsistent with the bus's video. Defendants filed objections to Dr. Berkowitz's declaration.

### F. Ruling on The Motion for Summary Judgment

The trial court held a hearing and subsequently granted defendants' motion for summary judgment. The court overruled Agustin's objections to defendants' evidence and separate statement.[8] To the extent Agustin's or her witnesses' testimony were inconsistent with the video evidence, the court did not consider such inconsistency a

---

[8] The trial court did not rule on defendants' objections to Dr. Berkowitz's declaration.

disputed fact and relied on the evidence in the video. The court explained its ruling: "The evidence indisputably shows that [Agustin] lost her balance after standing up prior to arriving at her bus stop. While [Agustin] was standing waiting to arrive at her bus stop, [Agustin] was not holding onto any pole or stanchion, had items in her hands and was talking on the phone. When [Agustin]'s accident occurred, the bus did not jerk or otherwise move in an unexpected manner. The bus was moving in an ordinary manner at the time [Agustin] lost her balance and fell." The court found Agustin's sole cause of action for motor vehicle negligence fails as a matter of law because there was no evidence of defendants' negligence and Agustin "assumed the risk of the ordinary movements of the bus, which her injury resulted from."

On April 30, 2024, the trial court entered judgment in favor of defendants and dismissed Agustin's case with prejudice. Agustin timely appealed.

## DISCUSSION

### I. STANDARD OF REVIEW

The purpose of summary judgment "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001; Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment bears the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) Once the defendant makes that showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact. (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the

8.

motion in accordance with the applicable standard of proof." (*Ibid.*)

We review an order granting summary judgment de novo. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249 (*Conroy*).) "[O]ur task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 (*Hutton*).) "In reviewing the summary judgment, we apply the same three-step analysis used by the trial court: we (1) identify the issues framed by the pleadings; (2) determine whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.) In making this determination, "we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party." (*Hutton*, at p. 494.) We are not bound by the trial court's stated reasons for granting summary judgment because we review its ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

## II. APPLICABLE NEGLIGENCE PRINCIPLES

To establish liability on a negligence claim, "the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries." (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1188.) "As a practical matter, these elements are interrelated, as the question whether an act or omission will be considered a breach of duty or a proximate cause of injury necessarily depends upon the scope of the duty imposed." (*Wattenbarger v. Cincinnati Reds Inc.* (1994) 28 Cal.App.4th 746, 751 (*Wattenbarger*).)

"In ordinary negligence cases, the duty is that of ordinary care which a reasonable, prudent person would use considering all the circumstances." (*Squaw Valley Ski Corp. v. Superior Court* (1999) 2 Cal.App.4th 1499, 1506 (*Squaw Valley*); Civ. Code, § 1714, subd. (a).) But "[c]arriers of persons for reward have long been subject to a heightened

9.

duty of care." (*Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1128.) For common carriers,[9] Civil Code section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

"The heightened duty of care owed by common carriers for reward does not make them insurers or render them strictly liable for all injuries. [Citations.] Instead, that duty obligates them to exercise the 'utmost care and diligence for … safe carriage, [to] provide everything necessary for that purpose, and [to] exercise to that end a reasonable degree of skill' (Civ. Code, § 2100); 'even the slightest[ ] negligence' renders them liable [citation]. This means common carriers must 'do all that human care, vigilance, and foresight reasonably can do under the circumstances,' albeit 'consistent with the character and mode of conveyance adopted and the practical operation of [their] business.' " (*Smith v. Magic Mountain LLC* (2024) 106 Cal.App.5th 1128, 1136–1137; *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 (*Lopez*).) "This elevated standard of care for common carriers has its origin in English common law. It is based on a recognition that the privilege of serving the public as a common carrier necessarily entails great responsibility, requiring common carriers to exercise a high duty of care towards their customers." (*Squaw Valley*, *supra*, 2 Cal.App.4th at p. 1507.)

III.    SCOPE OF THE ISSUES

We first address the scope of the allegations in the FAC, which alleged Cunningham was negligent because he "operated his vehicle without caution and in such a reckless and unsafe manner that he was speeding, driving recklessly and, without warning, abruptly stopped" the bus. The FAC further alleged defendants "negligently,

---

9       Civil Code section 2168 defines common carrier: "Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." Defendants do not dispute GETD is a common carrier.

wantonly, carelessly, and/or recklessly entrusted, owned, operated a motor vehicle in an unreasonable and unsafe manner." Defendants were alleged to be "statutorily liable for the negligent acts of the Defendants' employee while he/she was operating the subject vehicle."

Agustin contends Dr. Berkowitz's declaration raised disputed issues of fact as to whether defendants breached their heightened duty of care due to Cunningham's failure to warn Agustin to sit down or hold on.[10] Agustin claims Dr. Berkowitz's declaration showed the applicable safety standards require a bus driver to, among other things: (1) check mirrors to determine whether any passengers are standing before moving; and (2) advise standing passengers to sit if seats are available or to hold onto a pole, railing or the like. Defendants argue the FAC only pled negligent operation of a vehicle and did not allege a failure to warn. In response, Agustin argues the issue was whether Cunningham was negligent in his "operation and management" of the bus with respect to Agustin as his passenger. She contends the FAC's allegations were not limited to "the few specifics alleged but also include broader, general negligence allegations."

It has long been understood a negligence cause of action may be pled in general terms. There are however "limits to the generality with which a plaintiff is permitted to state his cause of action, and it is ordinarily said that while negligence may be pleaded in general terms, the plaintiff must indicate the acts or omissions which are said to have been negligently performed." (*Guillams v. Hollywood Hospital* (1941) 18 Cal.2d 97,

---

[10] Agustin claims the trial court erred by failing to consider Dr. Berkowitz's declaration in ruling on defendants' motion for summary judgment. The court did not discuss Dr. Berkowitz's declaration in its order or rule on defendants' objections to his declaration. "[I]f the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) We therefore presume the court considered Dr. Berkowitz's declaration in ruling on summary judgment.

11.

101.)  Because "one of the purposes of a complaint is to apprise the defendant of the basis on which the plaintiff seeks recovery," Agustin could not just broadly claim defendants acted negligently without identifying their negligent acts or omissions.  (*Prue v. Brady Co./San Diego Inc.* (2015) 242 Cal.App.4th 1367, 1376.)  She was obliged to set forth in her FAC "the essential facts of [her] case with reasonable precision and with particularity sufficient to acquaint the defendant with the nature, source, and extent of [her] claim." (*Ibid.*)

Importantly, this case involves a claim against a public employee and a public entity and is subject to the Government Claims Act (§ 810 et seq.; the Act).  The Act mandates that "all governmental tort liability must be based on statute."  (*Lopez*, *supra*, 40 Cal.3d at p. 785, fn. 2; § 815, subd. (a).)  Because "all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable.  Thus, 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.' " (*Lopez*, at p. 795.)

In the absence of a statutory immunity, a public employee is generally "liable for injury caused by his act or omission to the same extent as a private person."  (§ 820, subd. (a)).  Under section 815.2, a public entity is vicariously liable for the torts of their employees.  "Thus, 'the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person [citation] and the public entity is vicariously liable for any injury which its employee causes [citation] to the same extent as a private employer [citation].' " (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.)

Because a government's duty is based solely on statute, the statute "claimed to establish the duty must at the very least be identified."  (*County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 638; see also *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 ["direct tort liability of public entities

12.

must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care"].)  The only statutory liability Agustin's FAC identifies is Vehicle Code section 17001.  Vehicle Code section 17001 provides:  "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."  In adopting Vehicle Code section 17001, "it was the intention of the [L]egislature to use the word 'operation' in its popular and ordinary sense as applied to motor vehicles.  That is, to be in operation, the vehicle must be in a 'state of being at work' or 'in the active exercise of some specific function' by performing work or producing effects at the time and place the injury is inflicted." (*Chilcote v. San Bernardino County* (1933) 218 Cal. 444, 445 [construing Civ. Code, § 1714 1/4, the predecessor to Veh. Code, § 17001].)  For the statute to apply "it is not sufficient that a motor vehicle somehow be involved in the series of events that results in the injury.  The injury must be proximately caused by the negligent 'operation of a motor vehicle.' " (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 923.)  Vehicle Code section 17001 provides a form of vicarious liability against a public entity for a public employee's negligent operation of a motor vehicle because liability under the statute "rests on the doctrine of respondeat superior."  (*Simons v. County of Kern* (1965) 234 Cal.App.2d 362, 365.)  The respondeat superior doctrine "makes an employer liable, irrespective of fault, for negligent driving by its employee in the scope of employment." (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1152 (*Diaz*).)

The FAC's use of the term "entrusted" suggests Agustin was also asserting direct liability against GETD.  Negligent entrustment "makes an employer liable for its own negligence in choosing an employee to drive a vehicle."  (*Diaz*, *supra*, 51 Cal.4th at p. 1152.)  Liability under the negligent entrustment doctrine arises from entrusting a " ' "motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the

13.

[employer].” ’ ” (*Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 559; see CACI No. 724.) Both the doctrines of respondeat superior and negligent entrustment require the plaintiff's injury was proximately caused by the employee's negligent driving. (*Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 869–870 [an employer's liability under negligent entrustment is dependent on a finding of negligence and causation of harm by the employee].) Negligent entrustment differs in that the employer is alleged to be directly liable for negligently choosing a driver rather than vicariously liable for the employee's negligent driving. Here, the FAC contains no specific facts as to how GETD negligently entrusted its vehicles to Cunningham. Moreover, negligent entrustment is a common law liability doctrine (*Ghezavat*, at p. 559), and the FAC cites no statutory authority for pursuing this theory against GETD. Because GETD's liability was solely pled as vicarious under Vehicle Code section 17001, liability for both Cunningham and GETD was entirely dependent on whether Cunningham negligently operated the bus.

We do not mean to imply Agustin's FAC did not set forth the essential facts of her claim with sufficient particularity. But given the FAC's contours as outlined above, the gravamen of her claim was that Cunningham drove in a negligent manner. The question remains if the FAC's allegations may be read as alleging facts that Cunningham breached the heightened duty of care applicable to common carriers by failing to warn Agustin to hold on or sit down. In Agustin's view, the FAC's allegations encompass "more than merely technically non-negligent driving" and includes, as established by her expert evidence, "awareness of the passengers' position on the bus and taking reasonable precautions for the safety of the bus's passengers."

"The complaint limits the issues to be addressed at the motion for summary judgment." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 (*Laabs*).) "Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a

14.

moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton*, *supra*, 213 Cal.App.4th at p. 493.) The rationale for this principle "is clear: It is the allegations in the complaint to which the summary judgment motion must respond. [Citation.] Upon a motion for summary judgment, amendments to the pleadings are readily allowed. [Citation.] If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself." (*Laabs*, at p. 1258.) "To allow an issue that has not been pled to be raised in opposition to a motion for summary judgment in the absence of an amended pleading, allows nothing more than a moving target. For Code of Civil Procedure section 437c to have procedural viability, the parties must be acting on a known or set stage." (*Id.* at p. 1258, fn. 7.)

This does not mean a plaintiff is precluded from raising any new facts or issues in opposing summary judgment. In general, "new factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them. In making this determination, courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis." (*Laabs*, *supra*, 163 Cal.App.4th at p. 1257; see also Code Civ. Proc., § 452 [allegations in pleadings must be liberally construed].)

*Laabs* is instructive. In *Laabs*, the plaintiff was injured in an automobile accident and sued the City of Victorville. In the operative complaint, the plaintiff alleged a cause of action for premises liability against the city based on a dangerous condition of public property (§ 835). The complaint alleged the plaintiff's injuries were caused by inadequate sight distance at the subject intersection, which prevented another driver from seeing the vehicle in which the plaintiff was a passenger. The city moved for summary judgment. In opposing the city's motion, the plaintiff argued the placement of a light pole or luminaire constituted a dangerous condition that contributed to her injuries. The

trial court granted the city's motion for summary judgment. (*Laabs*, *supra*, 163 Cal.App.4th at pp. 1249–1250.)

On appeal, the city argued that because the plaintiff made no allegations regarding the dangerous condition of the light pole location in the operative complaint, the Court of Appeal could not consider the issue in determining whether summary judgment was properly granted. (*Laabs*, *supra*, 163 Cal.App.4th at p. 1252.) In response, the plaintiff argued the placement of the light pole, while not specifically referenced in the complaint, was " 'closely tied to the City's dangerous condition liability which was clearly alleged in plaintiff's complaint.' " (*Ibid*.) The court concluded the plaintiff could not raise the issue of the light pole's location for the first time in opposing summary judgment. The court observed the complaint spoke only of the intersection as a dangerous condition, did not explicitly or implicitly involve the light pole, nor mention any facts that the plaintiff's vehicle had struck the light pole. (*Id.* at p. 1258.) "The additional fact shifts the alleged dangerous condition to a portion of public property not remotely referenced in the amended complaint. It attempts to predicate liability on a totally different condition, not the least bit involved with the intersection or inadequate sight distance." (*Ibid*.)

Here, as in *Laabs*, Agustin's allegations in her opposition that Cunningham breached the standard of care by failing to warn her to hold on or sit down before moving the bus or check his mirrors were outside the scope of the pleadings. The facts in the FAC only addressed how Cunningham drove the bus by focusing on the bus's speed, driving recklessly, and stopping abruptly. No mention was made of facts as to Cunningham advising standing passengers to sit down or hold on or to check mirrors to determine passengers' position, nor did the FAC include facts regarding inertial forces on passengers while the bus turns. Issues related to the bus turning were not raised at all. Agustin's new theory of liability was premised on a fundamentally different factual basis. Like in *Laabs*, the additional factual allegations shifted Agustin's negligence claims to facts regarding Cunningham's conduct not remotely referenced in the FAC. Agustin may

16.

not raise new factual issues beyond the scope of the FAC through Dr. Berkowitz's declaration. (*Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1223 ["A party cannot raise new issues of materiality merely by submitting a declaration in opposition to the summary judgment motion."].) A declaration in opposition to a motion for summary judgment is no substitute for amended pleadings. (*Conroy*, *supra*, 45 Cal.4th at p. 1254.)

Therefore, the trial court properly disregarded any factual issues raised by Dr. Berkowitz's declaration that were outside the scope of the pleadings. (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 [evidence offered on an unpled theory of liability is irrelevant because it is outside the scope of the pleadings].) Defendants were not required to address on summary judgment theories of liability based on facts fundamentally different from those alleged in the FAC.

## IV. WHETHER DEFENDANTS NEGATED THE ALLEGATIONS

We next consider whether defendants negated the allegations as encompassed by the FAC. In moving for summary judgment, defendants did not dispute that as a common carrier they owed a heighted duty of care to bus passengers like Agustin. Defendants argued however that they did not owe a duty of care as to the bus's ordinary movement and Agustin as a passenger assumed the risk of such movement. In their motion for summary judgment and on appeal, defendants rely primarily on *McIntosh v. Los Angeles Ry. Corp.* (1936) 7 Cal.2d 90 (*McIntosh*) and *Tait v. City and County of San Francisco* (1956) 143 Cal.App.2d 787 (*Tait*) to support their contention a common carrier is not liable for the ordinary movement of a bus. Defendants focused on the scope of their duty of care to Agustin. The scope of a defendant's duty of care is a question of law to be decided by the court. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313 (*Knight*).) We examine *McIntosh* and *Tait* and subsequent developments in common law tort principles to address the import of *McIntosh* and *Tait*, if any, on the instant action.

17.

A.  *McIntosh* and *Tait*

In *McIntosh*, the plaintiff was riding an electric streetcar operated by the city of Los Angeles.  The plaintiff got up from his seat to get off at his stop and moved to the car's front section.  As the streetcar was rounding a curve, the plaintiff was thrown out the car's window so that his body was outside the car from the hips down and was carried in this position approximately 150 feet until the car came to its next stop.  (*McIntosh*, *supra*, 7 Cal.2d at p. 92.)  In affirming judgment for the plaintiff, our Supreme Court acknowledged "some swaying is inherent and unavoidable in any moving car; that passengers in such cars must assume these ordinary risks when they voluntarily enter a car for the purpose of being transported therein; and that any injury sustained by a passenger by such ordinary movements of the car cannot be attributed to the negligent operation of the car.  But this case, however, is not one of those, but belongs to that class of cases where the evidence shows that the passenger was injured by some unusual movement of the car while it was being operated by the carrier.  In this class of cases, the authorities are uniform in holding that evidence that a passenger has been injured as a result of the unusual movement of a car while being operated by the carrier casts upon the carrier the burden of showing that the passenger's injury was not due to the negligence of the carrier."  (*Id.* at p. 96.)

*Tait* issued 20 years after *McIntosh*.  In *Tait*, the plaintiff claimed injury from riding a trolley car in San Francisco that stopped with a violent jerk.  The jury found in favor of the city and the plaintiff challenged the verdict on the grounds of insufficient evidence and erroneous instructions.  (*Tait*, *supra*, 143 Cal.App.2d at p. 788.)  The Court of Appeal assumed the jury found the plaintiff was contributorily negligent because she stood in a trolley car that was going to stop without holding on and her failure to hold on proximately contributed to her injury.  (*Id.* at p. 790.)  The plaintiff challenged the following instruction adopted from *McIntosh*:  " 'Now, some movement and swaying and/or some movement and swaying or otherwise is inherent and unavoidable in any

18.

moving car or bus; passengers in such cars must assume these ordinary risks when they voluntarily enter a car for the purpose of being transported therein and that any injury sustained by a passenger by such ordinary movements of the car cannot be attributed to the negligent operation of the car or bus.' " (*Tait*, at p. 793.) The court found this instruction was intended "to distinguish between ordinary and inherently unavoidable movements of the car, by swaying or otherwise, of which the passenger must bear the risk, and movements caused by negligent operation of the car, for which the carrier is liable, with sufficient clarity not to confuse the jury." (*Ibid*.) The court concluded the instruction was "still good law" and "appropriate under the circumstances of this case." (*Ibid*.) Finding the jury's verdict was supported by the evidence and no erroneous instructions, the court affirmed the judgment.

### B. Comparative Negligence and Assumption of Risk

Before 1975, and thus at the time of *McIntosh* and *Tait*, a plaintiff's contributory negligence was a complete bar to recovery against a defendant whose negligent conduct would otherwise make him or her liable for harm to the plaintiff. In *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, our Supreme Court abrogated the " 'all-or-nothing' " rule of contributory negligence in California and adopted a " 'pure' " form of comparative negligence under which liability is assessed in proportion to fault. (*Id.* at pp. 828–829.)

"Prior to the adoption of comparative fault principles of liability, there often was no need to distinguish between the different categories of assumption of risk cases, because if a case fell into either category, the plaintiff's recovery was totally barred. With the adoption of comparative fault, however, it became essential to differentiate between the distinct categories of cases that traditionally had been lumped together under the rubric of assumption of risk." (*Knight*, *supra*, 3 Cal.4th at p. 304.) The plurality in *Knight* identified two types of assumption of risk: primary and secondary. (*Id.* at p. 308.) Primary assumption of risk involves cases where the defendant owes no duty of care to protect the plaintiff from a particular risk of harm. (*Ibid*.) Secondary assumption

19.

of risk is where "the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty." (*Ibid.*) "Primary assumption of risk, when applicable, completely bars the plaintiff's recovery. [Citation.] The doctrine of secondary assumption of risk, by contrast, 'is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties.' " (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1068, citing *Knight*, at pp. 314–315.)

"Primary assumption of risk occurs where a plaintiff voluntarily participates in a sporting event or activity involving certain inherent risks." (*Wattenbarger*, *supra*, 28 Cal.App.4th at p. 751; *Nalwa v. Cedar Fair L.P.* (2012) 55 Cal.4th 1148, 1152 (*Nalwa*).) Primary assumption of risk also applies where a plaintiff executes a contract with an express assumption of risk or under the firefighter's rule. (*Knight*, *supra*, 3 Cal.4th at p. 308, fn. 4; *id.* at p. 309, fn. 5.) The "primary assumption of risk doctrine operates to limit the duty owed by the defendant." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499; see also *Nalwa*, at p. 1154 [under the primary assumption of risk doctrine, a participant in an inherently dangerous activity is not owed a duty of ordinary care but only a duty not to increase the risks inherent in the activity itself].) In the context of a sport or activity, "[t]he primary assumption of risk doctrine rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities. It operates on the premise that imposing such a legal duty 'would work a basic alteration—or cause abandonment' of the activity." (*Nalwa*, at p. 1156.) This policy behind the primary assumption of risk doctrine serves to define its parameters. (*Ibid.*) The doctrine does not extend to *any* activity with inherent risk and " 'in its modern, post-*Knight* construction is considerably narrower in its application.' " (*Id.* at p. 1157.)

*C. Analysis*

Agustin argues *McIntosh* and *Tait* merely distinguish between injuries caused by ordinary non-negligent operation and those caused by negligent operation. She argues applying the assumption of risk doctrine in the common carrier context conflicts with significant limitations on that doctrine since California adopted a comparative fault system.

There is no dispute defendants were subject to a heightened duty of care as a common carrier. This heightened duty precludes application of the primary assumpwtion of risk doctrine. (*Nalwa*, *supra*, 55 Cal.4th at p. 1161.) "To conclude otherwise would be a logical impossibility: one cannot simultaneously owe both a higher duty (as a common carrier) and a lower duty (based on primary assumption of risk)." (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 500 (*Sharufa*); see also *Grotheer v. Escape Adventures, Inc.* (2017) 14 Cal.App.5th 1283, 1293 [whether a hot air balloon operator is a common carrier must be resolved "because the heightened duty of care in Civil Code section 2100 precludes the application of the primary assumption of risk doctrine"].) We therefore agree with Agustin the primary assumption of risk doctrine does not apply to her as a passenger riding with a common carrier. To the extent *McIntosh* and *Tait* are understood as holding that doctrine may absolve a common carrier of liability, that legal conclusion is no longer sound under the comparative fault system as adopted and interpreted by our Supreme Court.

This does not mean defendants are therefore liable for an injury resulting from the ordinary movement of the bus. While defendants framed the issue as the scope of their duty of care, the issue is more appropriately examined as whether defendants breached the applicable duty.[11] As discussed above, as a common carrier, defendants owed a

---

[11] To be sure, as previously noted, "the questions of duty and breach are intertwined: Whether a defendant's conduct amounts to a breach will depend on the nature of the duty owed." (*Sharufa*, *supra*, 49 Cal.App.5th at p. 498.)

21.

"duty of utmost care and the vigilance of a very cautious person" toward their passengers. (*Acosta v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 (*Acosta*).)[12] But even a bus driver exercising the vigilance of a very cautious person cannot eliminate the bus's ordinary movement caused by driving on the street. Cunningham cannot be said to have breached the heightened duty of care where the evidence shows the bus's movement at the time of Agustin's injury was nothing other than ordinary movement from traversing the road. And the bus's video shows the bus was moving in a reasonably expected way when Agustin fell. Agustin got up from her seat and walked to the bus's rear door with a plastic bag in her left hand and a phone held to her ear with her right hand. She used the bus's railing while standing up and grabbed onto another railing while moving to the rear. Agustin was standing near the rear door and starting to lean against the bus's partition as the bus began to turn onto Wible Road. She was not holding onto the railing at that point. The two other passengers sitting on the bus did not move in a way indicating the bus jerked before Agustin fell.[13] Rather, the evidence shows

---

[12] At oral argument, Agustin's attorney argued for the first time that any exception to the applicable common carrier duty of care must be supported by the *Rowland* factors and the trial court failed to engage in this analysis. (See *Rowland v. Christian* (1968) 69 Cal.2d 108; *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 217 [multi-factor test in *Rowland* used to determine whether to limit an existing duty].) Agustin's attorney conceded the *Rowland* factors had not previously come up but argued they are inherent in California law and were at issue because defendants claimed an exception to the duty of care. "[C]ontentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness." (*People v. Harris* (1992) 10 Cal.App.4th 672, 686.) Because we analyze whether defendants breached the applicable duty without limitation, and given the untimeliness of this argument, we need not and do not address whether the *Rowland* factors support limiting defendants' duty of care.

[13] Agustin argues there were no other standing passengers on the bus to compare the turn's effect to and no relevant comparison or inference can be drawn from the fact that none of the other passengers fell as no other passengers were standing. The video shows two other passengers on the bus who were seated when Agustin fell. While no comparison can be made to another standing passenger, how the bus's motion affected the seated passengers is relevant in assessing whether the bus moved in an unexpected or jerky manner.

Agustin fell because she was standing while the bus was in motion without holding onto anything and lost her balance. In the absence of evidence Cunningham breached his duty of care, Agustin could not establish a necessary element of her negligence claim.

Agustin argues the video evidence alone cannot support the conclusion defendants exhibited the utmost care. Defendants relied on *Swigart v. Bruno* (2017) 13 Cal.App.5th 529 (*Swigart*) to argue the trial court could rely on the bus's video to find there is no triable issue of fact as to whether Agustin fell from the bus's ordinary movement. In *Swigart*, the plaintiff was injured during an endurance horseback riding event when she was struck by a coparticipant's horse. (*Id.* at p. 532.) The plaintiff submitted to the trial court 40 minutes of video of the event recorded on a coparticipant's helmet. (*Id.* at p. 534, fn. 4.) The Court of Appeal noted "[t]o the extent that [the plaintiff's] witnesses' testimony was inconsistent with the video, we do not consider such inconsistency a disputed fact and have relied on the evidence in the video." (*Ibid.*) The court then relied on the video evidence to conclude the plaintiff failed to show there was conflicting evidence as to what is inherent in endurance riding and the plaintiff's claim was barred by the primary assumption of risk doctrine. (*Id.* at p. 539.)

Agustin attempts to distinguish *Swigart* as limited to what risks were inherent in endurance riding, a matter evident from the rider's video, and argues the issues here are not simple matters of observing behavior. She contends the bus's video is subject to multiple conflicting factual inferences and cannot be relied upon to determine the facts as a matter of law. Not so. If a picture is worth a thousand words, a video is worth considerably more. A video objectively captures the sequence of events. Unlike a witness, a video does not suffer from bias or the fading of memory with time. (*Taylor v. County of Los Angeles* (2020) 50 Cal.App.5th 205, 213 [a "camera's video can be unbiased, unblinking, unchanging, and clear" and is "far superior" to a witness's testimony].) Additionally, "[f]act finders can give different weights to different kinds of evidence." (*Ibid.*) Like the *Swigart* court, the trial court reasonably concluded the bus's

23.

video offered the most reliable account of events and to the extent witness testimony was in conflict about what happened, the video evidence resolved those conflicts.[14]

In conclusion, defendants successfully met their burden of making a prima facie showing Agustin could not establish a necessary element of her claim.

## V. WHETHER AGUSTIN'S OPPOSITION SHOWED A DISPUTED ISSUE OF MATERIAL FACT

Lastly, we address whether Agustin showed there remained disputed issues of material fact in opposing defendants' motion for summary judgment.  In this regard, Agustin argued summary judgment was improper because:  (1) a trier of fact may assign a portion of fault to defendants for their negligence even if the factual issues raised by defendants indicate comparative negligence on Agustin's part; and (2) the res ipsa loquitur doctrine creates an inference of negligence when the passenger proves their injury resulted from the bus's operation and whether defendants negated this inference was a question of fact for a jury to decide.

### A. Comparative Negligence by Agustin

Agustin contends if she was negligent in failing to brace herself or hold on to a pole, the attribution of a particular level of fault between the parties is an issue of fact to be decided by the jury.

---

[14]     In her opening brief, Agustin provided Dropbox links purporting to provide the bus's video.  Shortly before oral argument, defendants filed a motion objecting to the Dropbox links in Agustin's opening brief as screen recordings of the bus's video and not the actual video exhibit before the trial court.  Defendants also sought leave to present the bus's video exhibit during oral argument.  Agustin's attorney did not file an objection to defendants' motion but noted at oral argument the bus's video was already part of the record on appeal and saw no purpose in playing the video during oral argument.  We orally granted defendants' motion at oral argument and defense counsel attempted to play the video but was unsuccessful in playing it in its entirety.  The entire video from the record before the trial court was submitted as part of the record on appeal and reviewed by this court.  Defendants' objection to the Dropbox links is sustained.

24.

As discussed above, California long ago abrogated contributory negligence and adopted a comparative negligence system.  The " 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury … in order to arrive at an 'equitable apportionment or allocation of loss.' " (*Knight*, *supra*, 3 Cal.4th at p. 314.) "While a negligent plaintiff is no longer barred from recovery, but is entitled to recover damages diminished in proportion to the fault attributable to him [citation], the plaintiff may not recover without first establishing his case.  A California plaintiff must still establish a prima facie case by proving that the defendant was negligent, and that that negligence was a proximate cause of his injuries, before there is anything against which his own negligence can be compared." (*Elder v. Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 657 (*Elder*).)

If the record on summary judgment indicates Agustin's injury was proximately caused by both parties' negligence, then Agustin is correct that the allocation of fault between the parties is a question of fact to be determined by a jury.  But the question of whether a defendant's conduct proximately caused a plaintiff's injury is not one that must *always* be submitted to a jury under our comparative negligence system.  (*Elder*, *supra*, 66 Cal.App.3d at p. 657.)  The comparative negligence doctrine "presupposes that there is independent negligence on both sides which is to be compared one to the other." (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 133 (*Fredette*).)  Where the evidence shows the plaintiff's negligence was the sole and proximate cause of an injury, comparative negligence principles simply do not come into play.  (*Ibid.*)  There is no fault to allocate in those circumstances.

As discussed above, the video shows the bus was not moving in an unexpected way when Agustin fell.  Agustin rode the bus two to three times per week as she "rode the bus for everything."  While she could not be expected to anticipate a " 'sudden' or 'violent' jerk" or stop (*Acosta*, *supra*, 2 Cal.3d at pp. 27–28), Agustin was well aware

" 'a certain amount of lurching and jerking is inevitable in the lawful operation' " of a bus (*id.* at p. 27).  The bus was not making a "sudden and unexpected" turn as Agustin asserts; Agustin knew the bus would be turning from the circle onto Wible Road because she was familiar with the bus's route.  As the bus turned, Agustin was holding a bag in her left hand, a phone to her ear in her right hand and was not holding the railing.  She lost her balance and fell because she was standing and not holding on while the bus was in motion.  Her "actions were simply not those of a reasonably prudent person exercising due care under the same or similar circumstances." (*Fredette*, *supra*, 187 Cal.App.3d at p. 133.)  Nothing defendants did or did not do was the proximate cause of Agustin's injury.  Because there was no fault between the parties to allocate, there was no need to submit the issue of the parties' respective share of fault to a jury.

### B.  Res Ipsa Loquitur

Agustin also argues the res ipsa loquitur doctrine applies because her injury resulted from the bus's operation and the burden of proof shifted to defendants to counter the inference of negligence.

"[C]ertain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say 'the thing speaks for itself.'  The Latin equivalent of this phrase, 'res ipsa loquitur,' was first applied to a barrel of flour that rolled out of the window of the defendant's warehouse onto the plaintiff.  (*Byrne v. Boadle* (1863) 159 Eng.Rep. 299, 300.)" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825.)  "[R]es ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible." (*Zentz v. Coca Cola Bottling Co. of Fresno* (1952) 39 Cal.2d 436, 446.)  In California, res ipsa loquitur is "a presumption affecting the burden of producing evidence." (Evid. Code, § 646, subd. (b); *Brown*, at p. 826.)  For res ipsa loquitur to apply, the plaintiff must show:  "(1) that the accident was of a kind which ordinarily does not occur in the absence of negligence, (2)

26.

that the instrumentality of harm was within the defendant's exclusive control, and (3) that the plaintiff did not voluntarily contribute to his or her own injuries." (*Brown*, at p. 836; see CACI No. 417 [res ipsa loquitur instruction].)

In *Hardin v. San Jose City Lines, Inc.* (1953) 41 Cal.2d 432 (*Hardin*), relied on by Agustin, our Supreme Court held the res ipsa loquitur doctrine applies where a passenger on a common carrier is injured as a result of the operation of the vehicle. (*Id.* at p. 436.) In *Hardin*, the plaintiff was standing near the bus's stairwell with a bag of groceries in one hand while grasping a vertical bar above the stairwell with her other hand. The bus was traveling 30 miles per hour in a 25-mile-per-hour zone when it came to a sudden halt about 150 feet from its regular stopping place. The plaintiff was thrown forward striking her back against a handrail at the front of the bus and suffering serious injuries. The plaintiff did not see anything that would have caused the bus driver to make a sudden stop. (*Id.* at p. 434.) There was conflicting evidence about whether the plaintiff was injured by this incident or by a man who hit her as the plaintiff later told one witness. (*Id.* at p. 435.) The jury found in favor of the plaintiff and the defendant on appeal challenged a jury instruction given on the res ipsa loquitur doctrine. (*Id.* at pp. 435–436.) Our Supreme Court observed "that an inference of negligence based on res ipsa loquitur arises in cases where a passenger on a common carrier is injured as the result of the operation of the vehicle and that the carrier is obliged to meet the inference by evidence sufficient to offset or balance it." (*Id.* at p. 436.) The court concluded, "the trial court could properly instruct the jury that, if the accident happened as described by plaintiff, an inference arose that her injury was caused by defendant's negligence and that it was incumbent upon defendant to rebut the inference by showing that it exercised the utmost care and diligence. This, of course, does not mean that the burden of proof shifts from plaintiff to defendant. The defendant has merely the burden of going forward with the evidence, that is, the burden of producing evidence sufficient to meet the inference of negligence by offsetting or balancing it." (*Id.* at p. 437, fn. omitted.)

*Hardin* is readily distinguishable from the instant case.  In *Hardin*, there was conflicting evidence about how the plaintiff was injured but if the plaintiff's version was believed, she was injured because the bus driver abruptly stopped the bus without any apparent cause.  Here, as already discussed, any conflicting witness testimony about what occurred on the bus was resolved by the video evidence.  That evidence revealed the bus did not move in an unexpected way or jerk before Agustin fell and instead the sole proximate cause of Agustin's injury was her failure to hold on while standing as the bus was in motion.  Agustin failed to show hers was the type of accident which ordinarily does not occur in the absence of negligence on defendants' part.  The res ipsa loquitur doctrine therefore was not implicated, and defendants did not have the burden of producing evidence to counter the inference of negligence raised by that doctrine.

**DISPOSITION**

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

FRANSON, Acting P. J.

WE CONCUR:

SNAUFFER, J.

FAIN, J.[*]

---

[*]     Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

28.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JANICE AGUSTIN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>GOLDEN EMPIRE TRANSIT DISTRICT et al.,<br><br>    Defendants and Respondents. | F088135<br><br>(Super. Ct. No. BCV-21-102362)<br><br><br>**ORDER MODIFYING OPINION, AND GRANTING PUBLICATION**<br>[NO CHANGE IN JUDGMENT] |

As the nonpublished opinion filed on October 29, 2025, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports.

Additionally, IT IS ORDERED that the opinion be modified as follows:

1.      On page 21, the following sentence is added to the beginning of the third paragraph before the sentence "This does not mean…":

Given parts of *McIntosh* and *Tait* are no longer good law, we reject defendants' contention a so-called *McIntosh* rule limits a common carrier's duty.

There is no change in judgment.

FRANSON, Acting P. J.

WE CONCUR:

SNAUFFER, J.

FAIN, J.*

---

\* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.